**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                                    No. 04-4887

GEORGE R. BLICK,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CR-04-7)

Argued: March 18, 2005

Decided: May 27, 2005

Before MICHAEL and SHEDD, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Dismissed by published opinion. Judge Shedd wrote the majority opinion, in which Senior Judge Hamilton joined. Judge Michael wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Jeffrey S. Parker, Great Falls, Virginia, for Appellant. Dana James Boente, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Gilbert K. Davis, DAVIS & ASSOCIATES, L.L.C., Fairfax, Virginia; James R. Tate, TATE & BYWATER,

LTD., Vienna, Virginia, for Appellant. Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

## OPINION

SHEDD, Circuit Judge:

George R. Blick appeals his 30-month sentence for wire fraud on two grounds: (1) the district court erroneously calculated the loss amount under U.S.S.G. § 2B1.1 in determining his sentencing guideline range, and (2) he should be resentenced in accord with *United States v. Booker*, 125 S. Ct. 738 (2005). The United States has moved to dismiss the appeal based on the appeal waiver in Blick's written plea agreement. Because we find that the appeal waiver is valid and that the issues Blick has raised are within the scope of the waiver, we grant the motion and dismiss this appeal.

I.

In January 2004, Blick was indicted on seven counts of wire fraud. Before trial, Blick and the United States entered into a plea agreement, in which he agreed to plead guilty to Count 5 of the indictment.

A.

The plea agreement contains a statement of facts that Blick agrees establishes his guilt on Count 5 beyond a reasonable doubt. These facts generally show that between March and October 2003, Blick was a principal and one-third shareholder of Enterprise Integration, Inc. ("EII"), a Fairfax, Virginia, information systems consulting business. EII maintained an account at the Bank of America ("the BOA account"). Blick was responsible for EII's accounting and routine business affairs, and he was a signatory on the BOA account.

Between April and September 2003, Blick made unauthorized withdrawals and payments totaling approximately $1,440,000 from the BOA account to fund a personal transaction that was unrelated to EII's business. Count 5 specifically relates to a July 29, 2003, wire

transfer of $180,000 Blick made (or caused) from the BOA account to Pratt Morgan, Ltd. in Madrid, Spain. Blick's EII partners were unaware of his unauthorized withdrawals and payments, and Blick believed that they would not have consented if they had known about them.

On July 11, 2003, three days before a new accountant was to begin working at EII, Blick deposited $785,000 into EII accounts to replace his prior unauthorized withdrawals and payments. Blick did not record any withdrawals or payments on EII's books until August 15, 2003. In late August 2003, Blick — without the knowledge or consent of his partners — requested that BOA change the mailing address for EII to a commercial mail receiving business. Blick committed all of these acts for the purpose of executing a scheme to defraud EII.

### B.

The plea agreement also contains several provisions related to sentencing. Blick and the United States acknowledged in the plea agreement that the "maximum penalties" for the wire fraud offense charged in Count 5 are "a maximum term of 20 years of imprisonment, a fine of $250,000, full restitution, a special assessment, and three years of supervised release." Blick acknowledged his understanding that the district court had "jurisdiction and authority to impose any sentence within the statutory maximum described above but that the Court [would] determine [his] actual sentence in accordance with the Sentencing Guidelines and Policy Statements."

The parties also agreed that "the actual or intended loss from the scheme to commit wire fraud [for purposes of U.S.S.G. § 2B1.1] is no greater than $655,000," and that Blick "reserves his right to contend he is entitled to a credit against the loss pursuant to Application Note 2(E)."[1] Moreover, Blick agreed to the entry of a restitution order "for the full amount of the victims' losses," and he acknowledged that the United States was then aware that EII was a victim which had suf-

---

[1]Blick's July 11, 2003, deposit of $785,000 into EII's accounts left a shortfall of $655,000. Under Application Note 2(E) to U.S.S.G. § 2B1.1, the amount of loss is reduced by any money the defendant returned to the victim before the offense was detected.

fered a loss of $655,000. The parties further agreed that under appropriate circumstances Blick would be entitled to a three-level sentencing reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility.

In a section of the plea agreement titled "Waiver of Appeal and Review," Blick acknowledged his understanding of his right under 18 U.S.C. § 3742 to appeal the sentence imposed. However, Blick agreed that he "knowingly waives the right to appeal . . . any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) on the grounds set forth in [§ 3742] or on any ground whatsoever, in exchange for the concessions made by the United States in [the] plea agreement." The United States' concessions included dismissal of the remaining six counts of the indictment and the grant of immunity to Blick from criminal prosecution in the Eastern District of Virginia for the remaining conduct described in the indictment and the stipulated facts.

Blick and his counsel signed the plea agreement. By their signatures, Blick and his counsel represented that Blick had been fully advised concerning the terms of the plea agreement and that his decision to enter into the plea agreement was voluntary.

## C.

At the guilty plea hearing, in response to questioning from the district court, Blick stated under oath that he understood his rights and how they would be affected by his guilty plea. Blick also stated that the factual statement in the plea agreement was accurate and that he was entering the plea voluntarily.

The district court also specifically inquired whether Blick had reviewed the plea agreement and whether he understood that in the agreement he was waiving "any right [he] may have to appeal the sentence that may be imposed." Blick answered both questions in the affirmative. Additionally, the district court asked Blick whether he understood "that by pleading guilty, the Court may impose the same punishment as if [he] had been tried and convicted by a court or by a jury." Blick answered, "Yes, sir, I do." Blick likewise indicated in response to questions from the district court that he understood that

he could be imprisoned "up to 20 years" and that "any sentence that may be imposed will be affected by the Sentencing Guidelines."

At the conclusion of the hearing, the district court found that Blick "voluntarily and intelligently" entered the plea and that a factual basis supported the plea. Accordingly, the district court accepted the plea and found Blick guilty on Count 5 of the indictment.

## II.

Less than one month after Blick pled guilty, but before he was sentenced, the Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531 (2004). In *Blakely*, the Court considered the constitutionality of the State of Washington's determinate sentencing scheme. Blakely had pled guilty to kidnaping, a felony punishable by a term of not more than 10 years of imprisonment. Other provisions of Washington law, comparable to the federal sentencing guidelines ("Guidelines"), mandated a sentencing range for Blakely of 49 to 53 months, unless the sentencing judge found aggravating facts justifying an exceptional sentence. The sentencing judge found that Blakely had acted with "deliberate cruelty" and therefore sentenced him to 90 months of imprisonment. *Id.* at 2534.

The Court, applying the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"), held that the imposition of the sentencing enhancement — which was based solely on the sentencing judge's factual findings — violated Blakely's Sixth Amendment rights because the facts supporting the findings were neither admitted by Blakely nor found by a jury. 124 S. Ct. at 2536-38. The Court thus set aside Blakely's sentence. *Id.* at 2538. Although the Court expressed no opinion on the effect its decision may have on the Guidelines, *see id.* at 2538 n.9, several dissenting Justices expressed concern that *Blakely* necessarily implied the invalidity of important aspects of the Guidelines. *See, e.g.*, *id.* at 2550 (O'Connor, J., dissenting); *id.* at 2561 (Breyer, J., dissenting).[2]

---

[2]These Justices had expressed similar concerns in *Apprendi*. *See, e.g.*, 530 U.S. at 544 (O'Connor, J., dissenting).

Shortly after *Blakely* was decided, we convened en banc in *United States v. Hammoud*, to consider *Blakely's* impact. Following that hearing, we entered an order affirming the judgment and holding that *Blakely* did not operate to invalidate Hammoud's sentence under the Guidelines. *United States v. Hammoud*, 378 F.3d 426 (4th Cir. 2004). We also instructed the district courts in this circuit to continue sentencing criminal defendants in accordance with the Guidelines, but we recommended that they announce, at the time of sentencing, a sentence pursuant to 18 U.S.C. § 3553(a), treating the Guidelines as advisory only. 378 F.3d at 426.

III.

After we decided *Hammoud*, a probation officer filed a presentence report ("PSR") recommending that Blick's sentencing range was 30-37 months of imprisonment. The probation officer recommended this range based on her conclusion that Blick's criminal history category was I, and his total offense level was 19. In calculating the total offense level, the probation officer began with a base offense level of 6, *see* U.S.S.G. § 2B1.1(a), and added 14 levels because the total intended loss of Blick's conduct was $655,000, *see* U.S.S.G. § 2B1.1(b)(1)(H). The probation officer added another two levels for Blick's abuse of a position of trust, *see* U.S.S.G. § 3B1.3, and subtracted three levels for his acceptance of responsibility, *see* U.S.S.G. § 3E1.1(b).

Before his sentencing hearing, Blick filed a sentencing memorandum and objections to the PSR. Generally, Blick argued that the loss amount for purposes of the sentence should be zero rather than $655,000 based on a "net loss" calculation. As he explains in his appellate brief: "The bottom-line is Blick's contention that he took his own money and the net loss to EII is zero." Blick also argued that under *Blakely* the district court would not be permitted to enhance his sentence at all for a loss amount or for abuse of a position of trust. Despite making this latter argument, Blick acknowledged our holding in *Hammoud*.

During the sentencing hearing, Blick reiterated his "net loss" and *Blakely* arguments. The district court rejected these arguments and, consistent with the recommendation in the PSR, sentenced Blick to

a term of 30 months of imprisonment and ordered him to pay $655,000 in restitution to EII.[3] The district court did not announce an alternate sentence under *Hammoud*. The remaining counts of the indictment were dismissed, and judgment was entered.

Despite his agreement not to appeal his sentence, Blick filed this appeal. In response, the United States moved to dismiss based on Blick's appeal waiver. While that motion was pending, the Supreme Court held in *Booker* that *Blakely* applies to the Guidelines and, therefore, the Sixth Amendment is violated when a district court imposes a mandatory sentence under the Guidelines that is greater than the maximum authorized by the facts found by the jury alone. 125 S. Ct. at 755. The Court also held, however, that two provisions of the statute creating the Guidelines system must be excised to make it compatible with the Sixth Amendment; this aspect of *Booker* makes the Guidelines advisory and their application subject to review for reasonableness. *Id.* at 764-65. The Court further held that its decision applies to all cases on direct review, subject to the application of "ordinary prudential doctrines." *Id.* at 769. In light of *Booker*, we directed the parties to file briefs addressing the impact, if any, that decision may have on this appeal.

## IV.

Blick appeals his sentence on two grounds. First, he contends that the district court erred in calculating the loss amount under U.S.S.G. § 2B1.1 because it did not accept his "net loss" theory. Second, he contends that the district court's sentencing enhancements for the loss amount and abuse of a position of trust run afoul of *Booker* and that he must therefore be resentenced. The threshold issue we must consider is whether the appeal waiver in Blick's plea agreement precludes him from presenting these issues on appeal. For the following reasons, we conclude that it does.

---

[3]The district court did not question the veracity of the evidence proffered by Blick on the "net loss" issue. Instead, the district court rejected the "net loss" theory, explaining: "[A]s long as you could liquidate any company . . . and somebody can embezzle at will as long as the liquidated value that they have in the company is greater than what they took, there is a zero embezzlement. I question that."

A.

A criminal defendant's right to appeal a sentence arises under 18 U.S.C. § 3742. In *United States v. Wiggins*, 905 F.2d 51, 53 (4th Cir. 1990), we held that a defendant can waive this right under appropriate circumstances.

Wiggins — despite signing a plea agreement that included a waiver of his right to appeal his sentence — appealed the district court's refusal to grant a sentencing reduction for acceptance of responsibility. Because we found that the appeal waiver was voluntarily and intelligently made, we dismissed the appeal without addressing the merits of Wiggins' argument. *Id.* at 54. We reasoned that "[i]f defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial, surely they are not precluded from waiving procedural rights granted by statute." *Id.* at 53 (internal quotation marks and citation omitted). We also observed that because appeal waivers "preserve[ ] the finality of judgments and sentences imposed pursuant to valid pleas of guilty," they "should be given their proper effect," and a defendant who waives his right to appeal for the purpose of obtaining concessions from the government "may not . . . ignore his part of the bargain." *Id.* at 54.

Since *Wiggins*, we have consistently adhered to the principle that sentencing appeal waivers generally are enforceable, and we have enforced such waivers in a number of cases.[4] In doing so, we have noted that holding a defendant to the plea bargain he struck is not "inequitable" because "[u]nlike a defendant who is sentenced after trial, a defendant who enters a plea bargain has some control over the terms

---

[4]*See, e.g.*, *United States v. General*, 278 F.3d 389, 399-401 (4th Cir. 2002); *United States v. Brown*, 232 F.3d 399, 402-06 (4th Cir. 2000); *United States v. Brock*, 211 F.3d 88, 92 n.6 (4th Cir. 2000); *United States v. Lambey*, 974 F.2d 1389, 1393 n.* (4th Cir. 1992) (en banc); *United States v. Marin*, 961 F.2d 493, 495-96 (4th Cir. 1992); *see also United States v. Davis*, 954 F.2d 182, 185-86 (4th Cir. 1992) (enforcing a waiver that precluded the defendant from appealing certain convictions); *cf. United States v. Williams*, 29 F.3d 172, 174-75 (4th Cir. 1994) (holding that a defendant who stipulated his drug amounts prior to sentencing waived his right to appeal on the issue of the drug amounts).

of his sentence," and if he "wants to ensure that he is sentenced in strict accordance with the guidelines, he can refuse to waive his right to appeal as a condition of the plea." *Brown*, 232 F.3d at 406 (citation omitted).[5] Recently, in *United States v. Lemaster*, 403 F.3d 216 (4th Cir. 2005), we extended our general rule concerning appeal waivers and held that a defendant may waive in a plea agreement his right under 28 U.S.C. § 2255 to attack his conviction and sentence collaterally.

Whether a defendant has effectively waived the right to appeal is an issue of law that we review de novo. *Marin*, 961 F.2d at 496. Where, as here, the United States seeks enforcement of an appeal waiver, *see Brock*, 211 F.3d at 90 n.1 (declining to consider an appeal waiver that "arguably" barred the appeal on one issue because the United States "expressly elected not to argue waiver with regard to this issue"), and there is no claim that the United States breached its obligations under the plea agreement, *see Bowe*, 257 F.3d at 342 (holding that the United States' breach of the plea agreement releases the defendant from the appeal waiver), we will enforce the waiver to preclude a defendant from appealing a specific issue if the record establishes that the waiver is valid and that the issue being appealed is within the scope of the waiver, *United States v. Attar*, 38 F.3d 727, 731-33 (4th Cir. 1994).

B.

The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. *Id.* at

---

[5]To whatever extent appeal waivers can be considered "inequitable," we evened the playing field somewhat in *United States v. Guevera*, 941 F.2d 1299, 1299 (4th Cir. 1991), where we held that when a defendant waives the right to appeal in a plea agreement, "such a provision against appeals must also be enforced against the government." In *United States v. Bowe*, 257 F.3d 336, 342 (4th Cir. 2001), we held that "a party's waiver of the right to seek appellate review is not enforceable where the opposing party breaches a plea agreement," and a defendant's material breach of the plea agreement releases the United States "from its implied reciprocal promise under *Guevara* not to appeal the merits of a judgment of conviction or sentence."

731-32. Although this determination is often made based on the adequacy of the plea colloquy — specifically, whether the district court questioned the defendant about the appeal waiver — the issue ultimately is "evaluated by reference to the totality of the circumstances." *General*, 278 F.3d at 400. Thus, the determination "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Davis*, 954 F.2d at 186 (internal quotation marks and citation omitted).[6]

Here, the record fully establishes that Blick knowingly and intelligently waived his right to appeal. The language and meaning of the appeal waiver — indeed, the plea agreement as a whole — is clear and unmistakable, and both Blick and his attorneys represented by their signatures to the plea agreement that Blick had been fully advised about, and understood, its terms. Moreover, during the plea colloquy the district court specifically questioned Blick — who has a college education — about his understanding of the appeal waiver, and Blick stated that he understood that he was "waiving any right [he] may have to appeal the sentence that may be imposed." Additionally, the district court found, after conducting the plea colloquy, that Blick was entering the plea "voluntarily and intelligently." Nothing in the record before us suggests that the district court's finding in this regard is erroneous. For these reasons, we find that the appeal waiver is valid.

## C.

We must now consider whether the two issues Blick has raised on appeal fall within the scope of the appeal waiver. The appeal waiver bars Blick from appealing "any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined)" on "any ground whatsoever." Therefore, the scope of the appeal waiver is twofold: (1) Blick cannot appeal on any ground any sentence within the maximum provided in the statute of

---

[6]We have noted that although Fed. R. Crim. P. 11 now requires district courts to inquire about appeal waivers during the plea colloquy, the failure to comply with the requirement is subject to plain error review. *General*, 278 F.3d at 400 n.5.

conviction, and (2) he cannot appeal on any ground the manner in which any sentence within the maximum provided in the statute of conviction was determined. Clearly, the language of this waiver is exceedingly broad, and (standing alone) it bars Blick from appealing his sentence unless it is not "within the maximum provided in the statute of conviction." *See United States v. Rubbo*, 396 F.3d 1330, 1333 (11th Cir. 2005) ("The general waiver language — 'all rights conferred by [§ 3742] to appeal any sentence imposed . . . or to appeal the manner in which the sentence was imposed' — certainly is broad enough to cover any issues arising from *Apprendi* . . . and its progeny, up to and including *Booker*.").

Blick was convicted under 18 U.S.C. § 1343. As Blick correctly acknowledged in the plea agreement and at his guilty plea hearing, the maximum sentence under § 1343 is 20 years of imprisonment. Blick's 30-month sentence is obviously "within the maximum provided in the statute of conviction."[7]

Consequently, we find that the issues Blick has raised on appeal

[7]We agree with the other circuits which have considered the issue that the Court's use of the term "statutory maximum" in *Blakely* and *Booker* does not alter the meaning of the language in the appeal waiver. *See United States v. Green*, ___ F.3d ___, 2005 Westlaw 1060608, at *10 (10th Cir. May 6, 2005) ("In holding that the term of art meaning for 'statutory maximum' applies in sentencing guidelines cases, the Supreme Court has not mandated that every time the phrase 'statutory maximum' is invoked, the *Blakely/Booker* definition should apply."); *Rubbo*, 396 F.3d at 1334 ("The point here is that the definition of 'statutory maximum' the Supreme Court used to describe and explain its holdings in those cases says nothing about what Rubbo and the government meant when they used the term 'the maximum permitted by statute' in the appeal waiver. This is not a matter of legal research. It is a question of the parties' intent."); *United States v. West*, 392 F.3d 450, 460 (D.C. Cir. 2004) ("Having consented in such plain terms to sentencing under the Guidelines, West would have us believe that he nevertheless reserved a constitutional challenge to the Guidelines through an exceedingly subtle employment of 'statutory maximum.' We find such a reading of the agreement untenable."); *see also United States v. McKinney*, ___ F.3d ___, 2005 Westlaw 887153, at *3 n.5 (5th Cir. April 15, 2005) (following *Rubbo* and *West*).

unquestionably fall within the scope of the appeal waiver. In making his "net loss" argument, Blick is appealing a sentence that is within the maximum provided in § 1343, and in making his *Booker* argument he is appealing the manner in which that sentence was determined. Blick is therefore attempting to do exactly what the appeal waiver forbids.

We reject Blick's contention that his reservation of the right "to contend he is entitled to a credit against the loss" — a right he fully exercised at his sentencing hearing — allows him to appeal the "net loss" issue. Moreover, the fact that Blick claims in his "net loss" argument that the district court erred in its guideline calculation is of no moment here. As we explained in *Brown*, an appeal waiver of the type involved in this case "precludes a claim that the given sentence resulted from a misapplication of the Guidelines." 232 F.3d at 404.

We also reject Blick's contention that he could not have knowingly waived his rights under *Booker* — or that his *Booker* argument is necessarily outside the scope of the appeal waiver — because that case had not been decided when he entered into the plea agreement. In doing so, we join with the other circuits that have considered this type of argument since *Booker. See United States v. Lockett*, ___ F.3d ___, 2005 Westlaw 1038937, at *5 (3d Cir. May 5, 2005) ("The record reflects that Lockett knowingly and voluntarily bargained for his plea agreement. He cannot now ask to re-bargain the waiver of his right to appeal because of changes in the law."); *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005) ("A valid plea agreement . . . requires knowledge of existing rights, not clairvoyance."); *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir.), *cert. denied*, ___ U.S.L.W. ___ (U.S. May 16, 2005) (No. 04-9566) ("An appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues. . . ."); *United States v. Killgo*, 397 F.3d 628, 629 n.2 (8th Cir. 2005) ("The fact that Killgo did not anticipate the *Blakely* or *Booker* rulings does not place the issue outside the scope of his waiver.");[8] *cf. United States v. Sahlin*, 399 F.3d 27, 30-31 & n.3

---

[8]*See also Green*, 2005 Westlaw 1060608, at **7-10; *United States v. Cardenas*, ___ F.3d ___, 2005 Westlaw 1027036, at *2 (9th Cir. May 4, 2005); *United States v. Morgan*, ___ F.3d ___, 2005 Westlaw 957186, at **1-2 (2d Cir. Apr. 27, 2005); *United States v. Bownes*, 405 F.3d 634, 636-38 (7th Cir. 2005).

(1st Cir. 2005) (rejecting as "frivolous," in the context of an attempt to withdraw a guilty plea, the defendant's argument that his plea was not knowing and voluntary because he did not anticipate *Booker*); *see generally United States v. Ruiz*, 536 U.S. 622, 629 (2002) ("And the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances — even though the defendant may not know the *specific detailed* consequences of invoking it.") (emphasis in original).

### D.

Notwithstanding the foregoing, Blick contends that his *Booker* argument is not within the scope of his appeal waiver based on a principle we first announced in *Marin*: *i.e.*, "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court." 961 F.2d at 496.[9] Applying this principle, we have refused to enforce valid appeal waivers for a "narrow class of claims," *Lemaster*, 403 F.3d at 220 n.2, based on our determination that those claims were not within the scope of the waiver.[10]

For example, the defendants in *Attar* waived their right to appeal "whatever sentence is imposed." 38 F.3d at 729. After the defendants pled guilty, a conflict developed between the defendants and their

---

[9]We continued: "For example, a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." 961 F.2d at 496. Nonetheless, this language appears to be dicta because we held that the sentence being appealed in that case "is not such a sentence." *Id.*

[10]As noted, we analyze appeal waivers under a two-part analysis by which we consider the validity and the scope of the waiver. We note that some other circuits analyze appeal waivers under a three-part analysis. *See, e.g.*, *United States v. Hahn*, 359 F.3d 1315, 1327 (10th Cir. 2004); *United States v. Andis*, 333 F.3d 886, 891-92 (8th Cir. 2003). These circuits consider the validity and scope of the waiver, and also whether enforcement of the waiver will result in a miscarriage of justice. Although we have not used the term miscarriage of justice in analyzing appeal waivers, the concept seems to be subsumed within our analysis of the scope of the waiver.

attorneys, and the attorneys moved to withdraw and to continue the sentencing. The district court denied the motions and ordered the defendants to appear for their sentencing hearing. At the sentencing hearing, however, the district court permitted the attorneys to withdraw, but it did not discuss with the defendants the perils of proceeding pro se or ensure that they wanted to proceed in that manner.

On appeal, the defendants argued that their sentences should be set aside because the proceedings following their guilty pleas — including the sentencing hearing — "were conducted in violation of their Sixth Amendment right to counsel." *Id.* at 731. The United States moved to dismiss the appeal "because the defendants waived all relevant appeal rights in the plea agreement." *Id.* Although we found that the appeal waiver was "generally valid and enforceable," we noted that "the real dispute" was not about its validity, but about its scope. *Id.* at 732. Referring to *Marin*, we stated that we did not think that a defendant who agreed to a general appeal waiver "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of his Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations." *Id.* We continued:

> In this case, defendants do not seek to challenge their sentences on the ground that they rest on an improper application of the guidelines or a violation of some procedural rule, as did the defendant in *Marin*. Instead, they seek to challenge their sentences on the ground that the proceedings following entry of the guilty plea — including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas — were conducted in violation of their Sixth Amendment right to counsel. We do not think the general waiver of appeal rights contained in this plea agreement can fairly be construed as a waiver of the right to challenge their sentences on that ground. Accordingly, we decline to dismiss this appeal, and proceed instead to its merits.

*Id.* at 732-33 (citations omitted).[11]

Similarly, in *United States v. Broughton-Jones*, 71 F.3d 1143 (4th Cir. 1995), we held that a valid appeal waiver in which Broughton-Jones waived her right to appeal her sentence on the grounds set forth in § 3742 did not preclude her from asserting on appeal that a restitution order (to which she had informally agreed) was not authorized by the applicable statute. Broughton-Jones had been charged with wire fraud and perjury, and she pled guilty only to one count of perjury. The district court sentenced her, among other things, to pay restitution to the wire fraud victim.

We concluded that the issue raised by Broughton-Jones fell outside the scope of the appeal waiver. *Id.* at 1146-47. We noted that the statute authorizing restitution limited such relief only for losses traceable to a defendant's offense of conviction, and the crime for which Broughton-Jones was convicted — perjury — did not cause any pecuniary harm to the restitution victim. *Id.* at 1147. Again, looking to *Marin*, we held that her challenge to the restitution order was outside the scope of her appeal waiver because it involved a claim that the sentence was "illegal." *Id.*

Notwithstanding some rather broad language in those opinions, we do not believe that the actual holdings of those cases compel the conclusion that Blick's arguments must be considered to be outside the scope of his appeal waiver, and we decline to extend those holdings in this case.[12] In both of those cases, the errors allegedly committed by the district courts were errors that the defendants could not have reasonably contemplated when the plea agreements were executed.

[11]On the merits, we affirmed the defendants' sentences. Although a defendant certainly can waive the right to counsel at a sentencing proceeding, *see generally Faretta v. California*, 422 U.S. 806, 807 (1975) (holding that a defendant has a right to proceed *pro se* at trial), we did not base our decision on that principle. Instead, we held that the district court did not abuse its discretion in refusing to grant the defendants a continuance. *Attar*, 38 F.3d at 733-35.

[12]We fail to see under any circumstance how Blick's "net loss" argument — which simply goes to the propriety of the Guidelines calculation — is affected by *Marin*, *Attar*, or *Broughton-Jones*.

Thus, it was not reasonable (or fair) to say that in agreeing to waive their appeal rights, the *Attar* defendants were agreeing to be sentenced without counsel, or Broughton-Jones was agreeing to be sentenced to an unauthorized restitution order. That simply was not part of the bargain they struck with the United States.

Blick's situation is entirely different. Unlike the defendants in those cases, Blick not only agreed to waive his right to appeal "any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined)" on "any ground," but he also agreed that he would be sentenced in accordance with the Guidelines.[13] Thus, at the time he entered the plea agreement, both Blick and the United States expressly contemplated and agreed that he would be sentenced in exactly the manner in which he was, in fact, sentenced: the pre-*Booker* Guidelines system. Although the law changed after Blick pled guilty, his expectations (as reflected in the plea agreement) did not. *See Bradley*, 400 F.3d at 466 ("Bradley's willingness to be sentenced under the Guidelines and generally to waive his right to appeal binds him no less now than it did when he signed the agreement."). Thus, far from being sentenced "at the whim of the district court," Blick was sentenced precisely in the manner that he anticipated. Had Blick desired to retain the right to raise an *Apprendi*-type claim (or any sentencing claim) on appeal, he could have opted not to agree to the appeal waiver.[14]

## V.

"Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain." *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993). Blick knowingly and intelligently agreed to waive his right to appeal on any ground his sentence and the manner

---

[13]Moreover, Blick stated at his guilty plea hearing that he understood "that by pleading guilty, the Court may impose the same punishment as if [he] had been tried and convicted by a court or by a jury."

[14]In *United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002), we held that the defendant waived his *Apprendi* claim by raising it in a Rule 28(j) letter rather than in his initial brief. If, as in that case, a defendant's inadvertence can operate as a waiver of an *Apprendi*-type issue, certainly a defendant's negotiated appeal waiver can do so.

in which he was sentenced in exchange for several concessions made by the United States, and he was sentenced in the manner to which he agreed. The United States has adhered to its part of the plea bargain. Allowing Blick to appeal on the issues he has raised, under these circumstances, would unfairly deny the United States an important benefit of its bargain.[15]

For all of the foregoing reasons, we hold that Blick's appeal waiver is valid and that the issues he has raised on appeal are within the scope of the waiver. Accordingly, we grant the United States' motion and dismiss this appeal.

*DISMISSED*

MICHAEL, Circuit Judge, dissenting:

Under his plea agreement with the government, George Blick pled guilty to one count of wire fraud and waived his right to appeal. The district court made findings of fact under the then-mandatory sentencing guidelines and sentenced Blick to thirty months in prison. Because Blick could not have received this sentence based solely on the facts he admitted in the plea agreement, the sentence was imposed in violation of his Sixth Amendment rights. *See United States v. Booker*, 125 S.Ct. 738 (2005). The majority holds that Blick's appeal waiver precludes him from challenging his unconstitutional sentence. I respectfully dissent because a defendant in this circuit cannot prospectively waive the right to appeal constitutional violations at sentencing. *See United States v. Attar*, 38 F.3d 727 (4th Cir. 1994).

---

[15]We note also that allowing Blick to appeal under these circumstances would upset the balance we mandated in *Guevera* — *i.e.*, the United States' implicit agreement to be bound by Blick's appeal waiver. As the Sixth Circuit recognized: "Simultaneous waivers of the right to appeal by two parties to a plea agreement, as here, would amount to little if future changes in the law permitted the benefitted party nonetheless to appeal." *Bradley*, 400 F.3d at 465.

I.

Blick was a one-third owner and CEO of Enterprise Integration, Inc. (EII), an information systems consulting firm. In early 2003 Blick was conned by a man claiming to be a Nigerian official who could, with some help from Blick, embezzle $20.5 million from the Nigerian government in connection with a government contract. The man promised to share the booty with Blick if Blick (1) would advance monies necessary to facilitate the scheme and (2) allow one of his companies to be designated as "the rightful recipient of the money." J.A. 96. Blick wired over $2,000,000 to the con artist, funding the advances in large part with unauthorized withdrawals from EII's bank account. Blick repaid some of the money, but by October 2003 so much was missing that EII was in danger of not making payroll. Blick then informed his co-owners about his unauthorized withdrawals, and his co-owners contacted the authorities. On January 6, 2004, Blick was indicted on seven counts of wire fraud. Blick ultimately entered into a written plea agreement with the government and pled guilty to one count. The government agreed to dismiss the remaining counts. The plea agreement included the following appeal waiver: "the defendant knowingly waives the right to appeal the conviction and any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined) . . . on any ground whatsoever, in exchange for the concessions made by the United States in this plea agreement." J.A. 34-35.

On June 6, 2004, after Blick pled guilty but before he was sentenced, the Supreme Court decided *Blakely v. Washington*, 124 S. Ct. 2531 (2004), which cast doubt on the constitutionality of the sentencing guidelines. At sentencing the district court made a factual finding that Blick's actions resulted in a loss of $655,000 to EII and added fourteen levels to Blick's base offense level under the guidelines. With the fourteen-level enhancement and other adjustments taken into account, the sentencing range was thirty to thirty-seven months. Without the fourteen-level enhancement, the sentencing range would have been zero to six months. Blick received a thirty-month sentence. He objected to the enhancement on the grounds that the imposition of a sentence greater than the maximum authorized by the facts admitted in the plea agreement was a violation of his Sixth Amendment rights under *Blakely*. Blick also moved the court to stay execution of the

judgment until the resolution of *Booker*, which was pending before the Supreme Court at the time of his sentencing. The district court denied Blick's motions but told him that if the Supreme Court's decision in *Booker* "affect[ed him]," the court would promptly entertain a motion to reconsider. J.A. 76. Blick filed an appeal to this court prior to the Supreme Court's *Booker* decision. He argues in his supplemental brief that he is entitled to a remand for resentencing in light of *Booker* and *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). The government contends that the appeal waiver bars Blick's appeal.

## II.

In *United States v. Attar* we held that a defendant cannot "fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of his Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations." 38 F.3d at 732. We have also held that an appeal waiver "will not bar appeal of a sentence when the sentence was . . . based on a constitutionally impermissible factor . . . ." *United States v. Brown*, 232 F.3d 399, 403 (4th Cir. 2000); *see also United States v. Broughton-Jones*, 71 F.3d 1143, 1147 (4th Cir. 1995) (same), *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992) (same). Blick's sentence was based on a "constitutionally impermissible factor," that is, it was based on facts found by the district court in violation of the Sixth Amendment. Likewise, Blick's sentencing hearing was not "conducted in accordance with constitutional limitations" because judicial factfinding that subjects a defendant to a sentence greater than that allowed by the plea bargain or jury verdict alone is unconstitutional. Accordingly, *Attar* and *Brown* prevent a defendant from prospectively waiving his right to challenge an unconstitutional sentence or sentencing procedure.

*Attar*'s rule against prospective waiver of the right to appeal constitutional violations at sentencing is consistent with the general rule that circumscribes the waiver of constitutional rights. "The relevant principle is well established: a promise [to waive a constitutional right] is

unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987); *see also id.* at 392 n.2. The public policy behind the jury trial right applied in *Booker* is the centuries-old policy of "guard[ing] against a spirit of oppression and tyranny on the part of rulers" and governments. *Booker*, 125 S.Ct. at 753 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000)). This public policy is harmed when enforcement of an appeal waiver agreement results in an unremedied violation of the jury trial right, a "constitutional [right] of surpassing importance." *Apprendi*, 530 U.S. at 476. This harm outweighs the interest in enforcing the agreement.

It is true that a defendant may waive constitutional rights as part of his decision to forego a trial. In that context, however, waiver or "[r]elinquishment derives . . . from the *admissions necessarily made* upon entry of a voluntary plea of guilty." *United States v. Broce*, 488 U.S. 563, 573-74 (1989) (emphasis added). Thus, the waiver of trial rights in a plea proceeding does not create the same risk of unremedied constitutional violations that exists when a defendant waives the right to appeal from a proceeding that has not yet taken place. For example, although a defendant waives his Sixth Amendment right to a jury trial by entering into a plea agreement, his Sixth Amendment rights are not violated in the plea proceeding. Similarly, if a defendant decides not to challenge the validity of a search or a confession before entering into a plea agreement, it is presumed that he has determined either that his rights were not violated and a challenge would be pointless or that the suppression of evidence would not significantly help his case on the merits. In other words, "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt . . . ." *Id.* at 569. Although trial rights are waived, a defendant's own admissions ensure the reliability of the conviction and protect against the dangers of unremedied constitutional violations.

By contrast, appeal waivers are not based on a defendant's admission of guilt. In the context of an appeal waiver, the defendant agrees not to appeal a sentencing court's factual, statutory, or constitutional rulings before they have even been made (presumably in exchange for a concession by the government). Thus, the defendant's agreement

provides no assurance that the court's subsequent determinations will be correct or that the sentence or sentencing procedures will be constitutional. We generally permit defendants to waive their right to appeal factual and legal determinations at sentencing in the interest of finality, *see United States v. Wiggins*, 905 F.2d 51, 53-54 (4th Cir. 1990), but *Attar* establishes that some limits are required. The waiver of the right to appeal errors in a proceeding that has yet to occur presents a substantial risk of unremedied constitutional violations that would "impair[ ] to an appreciable extent . . . the policies behind the rights involved." *Town of Newton*, 480 U.S. at 392 n.2. For this reason, *Attar* wisely held that the waiver of appellate review "is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations." 38 F.3d at 732.

The majority concludes that *Attar* does not require us to consider Blick's constitutional claim because that decision only prevents a defendant from waiving the right to appeal constitutional errors that are not "reasonably contemplated when the plea agreement[ ] [was] executed" or are "not part of the bargain [the defendant] struck with the United States." *Ante* at 15-16. Nothing in *Attar*, however, suggests that the rule precluding waiver of the right to appeal an unconstitutional sentence is limited to only unforeseen constitutional violations. Nevertheless, the majority appears to be saying that a defendant can subject himself to constitutional violations at sentencing so long as they are reasonably contemplated by the plea agreement. Under this approach, for example, a defendant could be sentenced without the assistance of counsel (or even *pro se* representation) if he consented to that in the plea agreement. Not only is this prospect disturbing, it violates the public policy behind the Sixth Amendment right to counsel.

The majority's analysis ignores a fundamental point: the rule in *Attar* and *Brown* serves to place certain limits on the rights the government can demand that a defendant waive, regardless of the literal terms of the waiver agreement. The rule that an appeal waiver is conditioned on a constitutional sentencing proceeding is based on the principle that "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court." *Marin*, 961 F.2d at 496. Even a defendant who signs a blanket

appeal waiver "retains the right to obtain appellate review of his sentence on certain limited grounds." *Attar*, 38 F.3d at 732.

I agree with the majority that Blick's decision to enter into the plea agreement was not rendered unknowing or involuntary because of *Booker*. "[A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the [decision to enter into the] plea rested on a faulty premise." *Brady v. United States*, 397 U.S. 742, 757 (1970). Under this rule a defendant may not rely on changes in the law to mount an attack on the validity of his guilty plea. This principle has led every other circuit that has addressed the issue to conclude that a defendant may waive his right to appeal a *Booker* error. *See ante* at 12-13 (collecting cases). In this circuit, however, we must abide by *Attar*, which holds that a defendant cannot prospectively waive the right to appeal constitutional violations at sentencing, even when the waiver is knowing and voluntary. Thus, while I agree that *Booker* does not render Blick's decision to enter into a plea agreement involuntary, under *Attar* his appeal waiver was "implicitly conditioned on the assumption that the [sentencing] proceedings following entry of [his] plea [would] be conducted in accordance with constitutional limitations." 38 F.3d at 732. Because Blick's sentence was enhanced by judge-found facts under a then-mandatory sentencing scheme, his sentence violated the Sixth Amendment.

The government points out that it made concessions to Blick (dropping six counts, for example) in exchange for his agreement to waive his appeal rights. Accordingly, the government argues that it would be denied the benefit of its bargain if Blick is resentenced on the one count. This is a valid point. Still, Blick's unconstitutional sentence cannot stand. I would therefore vacate the sentence and accord the government the option on remand to withdraw from the plea agreement. If the government withdrew from the plea agreement, both the agreement and Blick's guilty plea would be void. The parties would then start over with the seven-count indictment.