

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-13-2005

# USA v. Adams

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3127

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Adams" (2005). *2005 Decisions.* Paper 421.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/421

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 04-3127

———————

UNITED STATES OF AMERICA

v.

DARRYL ADAMS,
                              Appellant

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. Crim. 01-cr-00564
District Judge:  The Honorable Robert F. Kelly

———————

Submitted Under Third Circuit LAR 34.1(a)
September 16, 2005

———————

Before: SLOVITER, BARRY, and SMITH, <u>Circuit Judges</u>

———————

(Opinion Filed: October 13, 2005)

———————

OPINION

———————

BARRY, <u>Circuit Judge</u>

Darryl Adams asks us to vacate his 100-month sentence for five counts of bank robbery and remand his case for re-sentencing under *United States v. Booker*, 125 S. Ct. 738 (2005). First, however, we must determine whether Adams' decision to waive his right to appeal, absent a sentence that, as relevant here, "exceeds the statutory maximum," prevents us from doing so. Because we find that Adams' waiver was valid and enforceable, we lack jurisdiction and will dismiss the appeal.

**I.**

From July 19 through August 8, 2001, Adams entered five banks in southeastern Pennsylvania, ordered employees and patrons to get on the floor, and took money from the cash drawers. Adams stole a total of approximately $61,833 before he was arrested. On September 18, 2001, a grand jury indicted Adams on five counts of bank robbery, in violation of 18 U.S.C. § 2113(a).

On November 8, 2002, pursuant to a plea agreement, Adams entered a plea of guilty to all five counts. In the plea agreement, Adams acknowledged that under § 2113(a) the District Court could sentence him to a "statutory maximum" of 20 years in prison on each count, up to a total of 100 years. Additionally, Adams and the government entered into certain stipulations. First, in the stipulation relevant here, Adams agreed to be classified as a "career offender" for sentencing purposes under section 4B1.1(C) of the United States Sentencing Guidelines ("Guidelines") due to his two previous armed

robbery convictions in 1983 and 1985. The career offender stipulation resulted in a base offense level of 32 and a criminal history category of VI. Second, it was stipulated that Adams accepted responsibility for his offenses, qualifying him for a two-level reduction in his offense level under Guidelines section 3E1.1(a), and for an additional one-level reduction under section 3E1.1(b) because he informed the government of his intent to plead guilty in a timely manner. In return for these stipulations, Adams waived his right to appeal and to collaterally attack his conviction or his sentence unless, *inter alia*, "the defendant's sentence exceeds the statutory maximum." (App. 22a.)

At Adams' change-of-plea hearing, the District Court stated that the "total maximum possible sentence for the five counts of bank robbery would be 100 years in prison." When asked, "do you understand that?" Adams replied, "Yes." (App. 32a.) Additionally, the government orally restated the terms of Adams' plea agreement, including his agreement to be classified as a career offender under Guidelines section 4B1.1(c), and his agreement to waive his right to appeal absent a sentence that exceeds the statutory maximum. The Court then explained to Adams the significance of his waiver of appeal, and Adams and his counsel indicated that they were satisfied with the agreement. After finding that there was a factual basis for the plea and that Adams' prior convictions supported his designation as a career offender, the Court determined that Adams "understands his rights and [is] willing voluntarily to give up those rights," and accepted his guilty plea. (App. 36a-40a.).

The pre-sentence investigation report calculated Adams' combined adjusted offense level as 31. That number was then increased one level due to his career offender status, and lowered three levels for his acceptance of responsibility, for a total offense level of 29. His criminal history category of VI, when combined with his offense level of 29, resulted in a range of imprisonment of 151 to 188 months.

On June 24, 2004, the decision in *Blakely v. Washington*, 542 U.S. 296 (2004), was announced. At Adams' sentencing hearing just three weeks later, he objected, in light of *Blakely*, to any enhancements to his sentence based upon his career offender status. Despite his stipulation that he was, in fact, a career offender, Adams argued that, under *Blakely*, his Sixth Amendment right to a jury trial required that facts "legally essential to his sentence, be presented to a grand jury" and charged in the indictment. (App. 45a) Because the two prior crimes which served as the basis for his career offender status were not charged in the indictment, the argument went, they could not be considered for purposes of sentencing. The District Court disagreed, finding that Adams' stipulated status as a career offender was not affected by *Blakely*. A sentence of 100-months' imprisonment and three-years supervised release was imposed.[1]

---

[1]The District Court granted the government's motion under Guidelines section 5K1.1, resulting in a sentence below the guideline range.

**II.**

Adams asks us to remand for re-sentencing in light of *United States v. Booker*, 125 S. Ct. 738 (2005). However, because questions of subject matter jurisdiction must be considered at the outset, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998), and because if a defendant "knowingly and voluntarily waive[s] his right to appeal, the waiver effectively deprives us of jurisdiction," *United States v. Khattak*, 273 F.3d 557, 562 (3d Cir. 2001), we must first consider the effect of Adams' waiver of appeal.

**III.**

Adams does not dispute that he waived his right to appeal. He invokes, however, an exception to that waiver for claims that "the defendant's sentence exceeds the statutory maximum," arguing that his 100-month sentence exceeds, not the 20-year statutory maximum for bank robbery, but rather the definition of "statutory maximum" used by the Supreme Court in *Blakely* and *Booker*, *i.e.*, the "maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Booker*, 125 S. Ct. at 749 (quoting *Blakely*, 124 S. Ct. at 2537) (emphasis added). Despite the fact that he stipulated to his prior convictions and his resulting career offender classification, Adams argues that because those convictions were not charged in the indictment, the 100 months he received exceeded the 51-63 months the Guidelines would

have called for absent his career offender classification[2] and, thus, he was sentenced beyond the statutory maximum.

On June 26, 2000, the Supreme Court held in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." As noted by then-circuit judge, now Chief Justice Roberts, "[i]n *Apprendi*, 'statutory maximum' had a relatively clear meaning: it was the maximum penalty allowed by the criminal statute that the defendant was charged with violating." *United States v. West*, 392, F.3d 450, 459 (D.C. Cir. 2004) (citing *Apprendi*, 530 U.S. at 468-69)). This definition of "statutory maximum" is the phrase's usual and ordinary meaning. *See, e.g.*, *United States v. Lee*, 359 F.3d 194, 209-10 (3d

---

[2] Given our disposition of this case, we do not reach the merits of Adams' *Blakely-Booker* argument. Were we to do so, however, Adams would not prevail. *Booker* held that "any fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be *admitted by the defendant* or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756 (emphases added). Even aside from the fact that Adams *admitted* to his prior convictions and the facts underlying those convictions, thus negating the need for those matters to be "proved to a jury beyond a reasonable doubt," the fact of a prior conviction need not be charged in an indictment even *post-Blakely* and *Booker*. *Id.*; *Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998) (holding that recidivism is not an element of an offense as it goes to punishment only); *United States v. Ordaz*, 398 F.3d 236, 241 (3d Cir. 2005) ("The holding in *Almendarez-Torres* remains binding law, and nothing in *Blakely* or *Booker* holds otherwise."). Adams concedes the binding effect of *Almendarez-Torres*.

6

Cir. 2004) (contrasting the statutorily authorized maximum sentence for a crime with the guideline range applicable to a particular defendant who committed that crime).

Subsequently, on November 8, 2002, Adams pleaded guilty, waiving his right to appeal except, as relevant here, if his sentence exceeded the statutory maximum. The District Court explicitly informed Adams that he faced a "maximum possible penalty under the statute" of 100 years in prison. (App. 32a.) Adams said he understood, and did not suggest that "statutory maximum" meant only 51-63 months.

On June 24, 2004, the Supreme Court decided *Blakely*, which applied *Apprendi* to the State of Washington's sentencing guidelines and clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 124 S. Ct. at 2537. Less than one month later, on July 16, 2004, the District Court sentenced Adams to 100 months in prison, rejecting his *Blakely* objection.

This time line demonstrates that the *Blakely* definition of "statutory maximum" is not the one Adams and the government had in mind when entering into the plea agreement over one year and seven months prior to *Blakely*. Indeed, at the time of the plea agreement, our case law made clear that an *Apprendi* claim only existed if, based on facts found by the sentencing judge by a preponderance of the evidence, the defendant was sentenced beyond the maximum prescribed by statute. *See e.g.*, *United States v. Johnson*, 302 F.3d 139, 155, 155 n.14 (3d Cir. 2002) (finding *Apprendi* to be "irrelevant"

7

where the district court sentenced defendant to less than the maximum permitted by the statute violated); *United States v. Sanches-Gonzalez*, 294 F.3d 563, 565 (3d Cir. 2002) (rejecting defendant's *Apprendi* claim because he "did not receive a sentence 'beyond the prescribed statutory maximum'"). Adams himself acknowledges as much in his brief.

It was not until *Blakely* that "statutory maximum" was given the meaning Adams seeks to take advantage of now, and even then was only so defined "for *Apprendi* purposes," not to alter the term's plain meaning in the plea agreement context. As explained by the Court of Appeals for the Eleventh Circuit, *Blakely* and *Booker*'s use of "statutory maximum" in explaining *Apprendi*'s holding was intended to

> "describe the parameters of the rule announced in those decisions, a rule that had nothing to do with the scope of appeal waivers. The term was defined in a specialized, which is to say a non-natural, sense. It was defined that way not only for semantic convenience but also in order to justify and explain the holdings the Court entered in those decisions. Everyone knows that a judge must not impose a sentence in excess of the maximum that is statutorily specified for the crime. By labeling a sentence that the judge may not impose under the Apprendi/Booker doctrine as one in excess of the 'statutory maximum,' the Court may have sought to call into play that well-known principle of law."

*United States v. Rubbo*, 396 F.3 1330, 1334 (11th Cir. 2005) (citations omitted).

We find that the exception to Adams' waiver of appeal for a sentence in excess of the statutory maximum only applies to a sentence exceeding the maximum punishment prescribed by Congress in the criminal statute violated, 18 U.S.C. § 2113(a), and not the

8

"specialized," "non-natural" definition of "statutory maximum" in *Blakely* and *Booker*.[3]

Because Adams' sentence of 100 months for five counts of bank robbery does not exceed the "statutory maximum" of 20 years per count, the "statutory maximum" exception does not save him from his waiver of appeal.

Adams argues in the alternative that regardless of the "statutory maximum" exception, his waiver of appeal was invalid because "it was unknowingly and involuntarily entered into with respect to potential Blakely claims," given that *Blakely* had not yet been decided. (Appellant's Br. at 12, 14 n.4.) We reject this argument as well.

"[W]aivers of appeals are generally permissible if entered into knowingly and voluntarily, unless they work a miscarriage of justice." *Khattak*, 273 F.3d at 558. Neither a plea agreement nor a waiver of appeal is rendered unknowing or involuntary simply because a later court decision or statute expands a right waived in that agreement. *United States v. Lockett*, 406 F.3d 207, 213 (3d Cir. 2005) (citing *Brady v. United States*, 397

---

[3] Six of our sister courts of appeals have similarly ruled in cases with analogous or identical facts. *See United States v. Blick*, 408 F.3d 162, 169 n.7, 170 (4th Cir. 2005) (finding that defendant's post-*Apprendi*, pre-*Blakely* appeal waiver exception for a sentence in excess of the "statutory maximum" did not contemplate *Blakely*-based challenges to the Guidelines); *United States v. Bond*, 414 F.3d 542, 545-46 (5th Cir. 2005) (same); *United States v. Luebbert*, 411 F.3d 602, 603 (6th Cir. 2005) (same); *United States v. Rubbo*, 396 F.3d 1330, 1333-35 (11th Cir. 2005) (same); *United States v. West*, 392 F.3d 450, 460 (D.C. Cir. 2004) (same); *United States v. Green*, 405 F.3d 1180, 1193-94 (10th Cir. 2005) (following *Rubbo* and *West* in interpreting "statutory maximum" in a post-*Apprendi*, pre-*Blakely* case).

U.S. 742, 757 (1970)).  "A valid plea agreement, after all, requires knowledge of *existing* rights, not clairvoyance." *Lockett*, 406 F.3d at 213 (emphasis added).

Adams voluntarily pled guilty and waived his right to appeal his sentence with full knowledge of his *existing* rights and in exchange for certain benefits.  As with any contract, both sides assumed a risk in the plea agreement that later events would affect the attractiveness of the bargain.  To allow a defendant to void a plea of guilty or a waiver of appeal whenever subsequent changes in the law might help his or her case (and we do not suggest that *Blakely* and *Booker* would), would undermine the interest in finality of judgments and sentences, and would "prolong litigation, affording defendants the benefits of their agreements while shielding them from their self-imposed burdens." *Khattak*, 273 F.3d at 561.  Adams' failure to foresee *Blakely* and *Booker* does not render his plea or his waiver involuntary or unknowing and enforcing the waiver would surely not result in a miscarriage of justice.  We hold, as we held in *Lockett*, that "where a criminal defendant has voluntarily and knowingly entered into a plea agreement in which he or she waives the right to appeal, the defendant is not entitled to resentencing in light of *Booker*." *Lockett*, 406 F.3d at 214.

**IV.**

Because Adams has waived his right to appeal, the appeal will be dismissed for lack of jurisdiction.