[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 21, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-10874

_____

D. C. Docket No. 02-60049-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANGELA ANN RUBBO,
a.k.a. Angie,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 21, 2005)

Before CARNES and COX, Circuit Judges, and MILLS[*], District Judge.

_____

[*] Honorable Richard Mills, United States District Judge for the Central District of
Illinois, sitting by designation.

CARNES, Circuit Judge:

This Court has previously upheld the enforceability of appeal waivers that are knowingly and voluntarily entered. E.g., United States v. Bushert, 997 F.2d 1343 (11th Cir. 1993). We have explained how they serve important interests of the defendant as well as the government, United States v. Buchanan, 131 F.3d 1005, 1008 (11th Cir. 1997), and we could have added the judicial system itself to the list of beneficiaries. We have also held that "[a] waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues—indeed, it includes a waiver of the right to appeal blatant error." United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999) (footnote omitted).

Angela Rubbo does not dispute any of that, but she does contend that the appeal waiver she agreed to as part of her plea bargain ought not prevent her from raising sentencing issues arising under the Supreme Court's recent decision in United States v. Booker, 543 U.S. ___, ___ S.Ct. ___ , 2005 WL 50108 (2005). Her argument centers around the "maximum permitted by statute" exception in the waiver she entered. It is an interesting argument, but ultimately not a persuasive one.

A sixty-three count indictment charged Rubbo with mail fraud, wire fraud, money laundering, and various conspiracies, stemming from a multi-million dollar

telemarketing fraud operation that she and her three sons ran. Through plea negotiations with prosecutors, Rubbo's attorney managed to whittle the charges down to one: conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371. In return for the government agreeing to dismiss the remaining sixty-two counts against her and for other favors at sentencing, Rubbo agreed to plead guilty, cooperate, and waive her right to appeal any sentence she received subject to a few exceptions. After two hearings, the district court granted Rubbo's motion to change her plea to guilty, accepted that new plea, and adjudicated Rubbo guilty of the one count of violating § 371.

During the course of one of those hearings, the district court engaged in a colloquy with Rubbo in which it ensured that she fully understood the appeal waiver part of her plea agreement and voluntarily consented to it. To the extent that Rubbo contends that she did not knowingly and voluntarily agree to the appeal waiver, we reject that contention because it is inconsistent with the record.

At sentencing, the district court imposed over Rubbo's objections two enhancements. One was a two-level enhancement either because the offense involved relocating a fraudulent scheme to another jurisdiction to elude law enforcement, U.S.S.G. § 2F1.1(b)(5)(A) (Nov. 1998), or because it used sophisticated means, U.S.S.G. § 2F1.1(b)(5)(C) (Nov. 1998). The other was a two-

3

level enhancement for being an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, pursuant to U.S.S.G. § 3B1.1(c) (Nov. 1998). The district court ultimately sentenced Rubbo to forty-eight months' imprisonment, twelve short of the statutory cap of sixty months for the crime. See 18 U.S.C. § 371.

Notwithstanding her promise that she would not appeal, Rubbo did. She filed a brief contending that the impositions of the enhancements were erroneous applications of the guidelines. The government responded with a motion to dismiss Rubbo's appeal based upon the waiver. See generally Buchanan, 131 F.3d at 1008–09 (dismissal of appeal based upon waiver should, if possible, occur on motion before the government's brief is filed).

Rubbo filed a reply to the government's dismissal motion in which she indicated that in light of the intervening decision in Blakely v. Washington, 542 U.S. ___, 124 S. Ct. 2531 (2004), she wanted to raise on appeal the issue of whether the judge-imposed enhancements she had attacked in her initial brief, which coincidentally had been filed on the very day that Blakely was released, were unconstitutionally imposed in violation of the Sixth Amendment. Rubbo argued that issue was outside the scope of her appeal waiver because, if she were right on the merits of it, the sentence imposed on her exceeded the "statutory

4

maximum" as defined in <u>Blakely</u> and her waiver explicitly excepted sentences in

excess of the statutory maximum.[1]

The appeal waiver paragraph in the plea agreement that Rubbo signed says

this:

> The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Title 18, United States Code, Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, <u>unless the sentence exceeds the maximum permitted by statute</u> or is the result of an upward departure from the guideline range the Court establishes at sentencing. The defendant further understands that nothing in this plea agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the waiver of appellate rights. The defendant understands that, although the defendant will be sentenced in conformity with the Sentencing Guidelines, by this agreement the defendant waives the right to appeal the

---

[1] Because Rubbo did not raise the <u>Blakely</u> issue in her opening brief, the government contends that she is procedurally barred from arguing it. <u>See</u> <u>United States v. Levy</u>, 379 F.3d 1241, 1242–45 (11th Cir.) (<u>Blakely</u>-type claim waived by failure to raise it in initial brief on appeal), <u>reh'g denied</u> 391 F.3d 1327 (en banc) (2004); <u>see also</u> <u>United States v. Njau</u>, 386 F.3d 1039, 1042 (11th Cir. 2004) (same). Rubbo urges us not to apply the usual rule because she told the government in her response to its motion to dismiss that she was going to raise the <u>Blakely</u> issue and thereby gave the government an opportunity to brief the issue in its own opening brief. We need not address that novel procedural argument because Rubbo's appeal is due to be dismissed as a result of the appeal waiver irrespective of any procedural bar.

> sentence on the basis that the sentence is the result of an incorrect application of the Sentencing Guidelines.

The general waiver language—"all rights conferred by Title 18, United States Code, Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed"—certainly is broad enough to cover any issues arising from Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), and its progeny, up to and including Booker. Rubbo has not contended to the contrary. Her point is that there is an exception to that broad waiver. We have emphasized in the block quote the language setting out that exception, which is the linchpin to Rubbo's contention that her appeal waiver does not apply.

Rubbo's position is not outlandish. The plea agreement language permitting her to escape the waiver if "the sentence exceeds the maximum permitted by statute" is semantically similar to the "statutory maximum" term that was a key component of the Supreme Court's reasoning and analysis in Blakely. In its opinion in that case, the Court gave this definition of that term: "Our precedents make clear, however, that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 124 S. Ct. at 2537 (emphasis omitted). Two days before we heard oral argument in this case, the

6

Supreme Court released its <u>Booker</u> decision, and the <u>Blakely</u> issue discussed in Rubbo's opposition to the motion to dismiss this appeal became a <u>Booker</u> issue. The Supreme Court in <u>Booker</u> quoted the "statutory maximum" definition from its <u>Blakely</u> opinion. See <u>Booker</u>, 2005 WL 50108, at *7.

Because the sentence the district court imposed on Rubbo goes beyond that permitted on the basis of the facts she admitted during her plea colloquy, Rubbo contends that it exceeds the statutory maximum sentence for <u>Booker</u> purposes. Given that, she says that her sentence "exceeds the maximum permitted by statute" for purposes of the exception to the appeal waiver contained in her plea agreement. The problem with Rubbo's contention is its invisible premise, which is that "statutory maximum" for <u>Booker</u> purposes is the same thing as "the maximum permitted by statute" for purposes of Rubbo's appeal waiver. The two are not the same. The context in which the terms are used and the meaning they convey are different. After all, "[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." <u>Towne v. Eisner</u>, 245 U.S. 418, 425, 38 S. Ct. 158, 159 (1918) (Holmes, J.).

In the <u>Apprendi</u>/<u>Booker</u> line of decisions, the Supreme Court used the term "statutory maximum" to describe the parameters of the rule announced in those

7

decisions, a rule that had nothing to do with the scope of appeal waivers. Booker, 2005 WL 50108, at *7; Blakely, 124 S. Ct. at 2536–37; Apprendi, 530 U.S. at 487 n.13 & 490, 120 S. Ct. at 2361 n.13 & 2362–63. The term was defined in a specialized, which is to say a non-natural, sense. It was defined that way not only for semantic convenience but also in order to justify and explain the holdings the Court entered in those decisions. Everyone knows that a judge must not impose a sentence in excess of the maximum that is statutorily specified for the crime. See, e.g., Bushert, 997 F.2d at 1350 n.18 (describing as "axiomatic" the rule that "a court of the United States may not impose a penalty for a crime beyond that which is authorized by statute"). By labeling a sentence that the judge may not impose under the Apprendi/Booker doctrine as one in excess of the "statutory maximum," the Court may have sought to call into play that well-known principle of law.

Whether it did, however, is not the point for present purposes. The point here is that the definition of "statutory maximum" the Supreme Court used to describe and explain its holdings in those cases says nothing about what Rubbo and the government meant when they used the term "the maximum permitted by statute" in the appeal waiver. This is not a matter of legal research. It is a question of the parties' intent.

8

Plea bargains, we have recognized, are like contracts and should be interpreted in accord with what the parties intended.  See Howle, 166 F.3d at 1168 ("A plea agreement is, in essence, a contract between the Government and a criminal defendant."); Allen v. Thomas, 161 F.3d 667, 671 (11th Cir. 1997) ("[W]e have said that the construction of plea agreements is governed generally by the principles of contract law, as we have adapted it for purposes of criminal law . . . .") (internal marks and citation omitted); United States v. Knight, 867 F.2d 1285, 1288 (11th Cir. 1989) ("When [the defendant] accepted the plea offer, her discussions with [a DEA agent] were no longer with a view to an agreement; the negotiations had ended and a plea contract was formed.").  There is nothing to indicate that when these parties used the language "exceeds the maximum permitted by statute" to describe the sentence from which Rubbo would be permitted to appeal they intended those words to have anything other than their usual and ordinary meaning.  That meaning describes the upper limit of punishment that Congress has legislatively specified for violation of a statute; for example, five years for violation of 18 U.S.C. § 371.

For purposes of the exception to the appeal waiver, the parties chose to define the maximum sentence in terms of what is "permitted by statute," not in terms of what is permitted by the Apprendi line of decisions that was evolving at

9

the time. We asked counsel for Rubbo at oral argument whether there was anything in the record to indicate that the parties intended to reserve a right for her to appeal any Apprendi-type issues. He replied with commendable candor that there was not, and that if that had been the intent Rubbo would have raised an Apprendi issue at the sentence proceeding, which she did not.

We take our final point from the D.C. Circuit's decision last month in United States v. West, 392 F.3d 450 (D.C. Cir. 2004), which addressed the question of whether an exception to a waiver allowing a defendant to appeal if "the Court sentences [him] to a period of imprisonment longer than the statutory maximum" permitted an appeal on Apprendi/Blakely grounds. The defendant in that case also relied upon the definition of "statutory maximum" contained in the Blakely opinion, but the Court rejected as implausible the idea that the parties could have intended that meaning. Id. The Court added that giving such an interpretation to the term "statutory maximum" would also be inconsistent with other provisions of the plea agreement, thereby violating a cardinal principle of contract interpretation that a writing is to be interpreted as a whole. Id. (citing Restatement (Second) of Contracts § 202(2) (1981)). It would be inconsistent, because other provisions of the plea agreement set out the statutory maximum punishments the defendant could

receive for the two charges and, of course, they did so in terms of the punishment permitted under the terms of the statutes themselves.  Id.

The same is true in the present case.  A provision in the plea agreement states that Rubbo understands and acknowledges that "the Court may impose a statutory maximum term of imprisonment of up to five (5) years, followed by a term of supervised release of up to three (3) years, and a fine of up to $250,000," and order the defendant to pay restitution.  In that provision, "statutory maximum" unquestionably means the maximum permitted by the statute itself, undiminished by any Apprendi/Booker considerations.  If we were to read the language in the appeal waiver provision in this same agreement to mean anything else, we would be interpreting materially identical terms in the same contract to mean substantially different things.  That we will not do.

In summary, the right to appeal a sentence based on Apprendi/Booker grounds can be waived in a plea agreement.  Broad waiver language covers those grounds of appeal.  Absent some indication that the parties intended otherwise, when an exception to an appeal waiver is stated in terms of a sentence imposed in excess of the statutory maximum, those terms should be given their ordinary and natural meaning.   Ordinarily and naturally, "statutory maximum" and "the maximum permitted by statute" refer to the longest sentence that the statute which

11

punishes a crime permits a court to impose, regardless of whether the actual sentence must be shortened in a particular case because of the principles involved in the Apprendi/Booker line of decisions.

The government's motion to dismiss this appeal on the basis of the appeal waiver is granted.  APPEAL DISMISSED.