[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 27, 2005
THOMAS K. KAHN
CLERK

No. 05-10575
Non-Argument Calendar

_____

D. C. Docket No. 04-00172-CR-ORL-18-DAB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE LUIS MONTES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 27, 2005)

Before ANDERSON, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Jose Luis Montes directly appeals his 60-month sentence for possession with

intent to manufacture and manufacturing 100 or more marijuana plants, in

violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vii). Montes argues on appeal that the government breached its promise in the parties' plea agreement not to oppose sentencing at the low end of Montes's guideline range by informing the district court that Montes did not qualify for sentencing under the safety-valve provisions in 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. Montes further argues that the district court committed reversible error in concluding that he was not eligible for safety-valve relief. For the reasons set forth more fully below, we affirm.

A federal grand jury returned an indictment, charging Montes with the above-referenced possession offense, along with conspiracy to manufacture and possess with intent to manufacture 1,000 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii), and 846. Montes subsequently entered into a written plea agreement with the government, in which he promised to plead guilty to the possession charge, in exchange for the government agreeing to dismiss the conspiracy charge.

As part of this agreement, the government also promised that:

> At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the [c]ourt that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the [c]ourt. The defendant understands that this recommendation or request is not binding on the [c]ourt, and if not accepted by the [c]ourt, the defendant will not be allowed to withdraw from the plea.

2

Montes, in turn, acknowledged that he was entering into the agreement and pleading guilty freely and voluntarily, without reliance on any promises not contained in the agreement, and without threats, force, intimidation, or coercion.

Montes also admitted to the following facts:

> On or about July 27, 2004 . . . Montes, did knowingly and intentionally possess and control a hydroponic marihuana grow facility in a residential home. Said residential home is located at 912 Quinn Street Southeast, Palm Bay, Brevard County, Florida. The purpose of the facility was to manufacture marihuana. The total number of marihuana plants that [Montes] is responsible for is 151.

Finally, this plea agreement contained a sentence-appeal waiver, whereby Montes agreed that, assuming the government did not appeal, he was waiving his right to appeal his sentence, directly or collaterally, including a challenge to the applicability of the safety-valve provisions contained in § 3553(f) and § 5C1.2, "except in the following situations: (a) an upward departure by the sentencing judge; (b) a sentence above the statutory maximum; or (c) a sentence in violation of other law apart from the sentencing guidelines."

During Montes's plea colloquy, he again confirmed that the plea agreement contained the entire agreement between himself and the government. Montes then informed the magistrate judge who was conducting the hearing that, due to his lack of a criminal history, he likely would qualify for safety-valve relief and, thus, be eligible for sentencing below his, otherwise applicable, mandatory minimum

3

statutory sentence. The government responded that it did not have all of the information necessary to determine whether Montes qualified for safety-valve relief, and that the parties had no agreement concerning the applicability of this relief. Montes replied that he (1) had mentioned safety-valve relief to clarify for the record that he was not certain if he would qualify for it, and (2) understood that the parties had no agreements that were not contained in the plea agreement.

The magistrate also reviewed with Montes during this plea colloquy his waiver of his right to appeal his sentence, including explaining that he was waiving his right to attack his sentence directly or collaterally, and the exceptions under which Montes still could appeal his sentence. Montes, in turn, agreed that he was freely and voluntarily waiving this appellate right.[1] On the magistrate's recommendation, the district court ultimately accepted Montes's plea and adjudicated him guilty.

A probation officer then prepared a presentence investigation report ("PSI"), which included that, in July 2004, a confidential informant ("CI") informed agents with the Drug Enforcement Administration ("DEA") about a marijuana-growing operating that the CI had seen in Montes's home in Palm Bay, Florida. The DEA

---

[1] In agreeing that he was waiving his right to appeal his sentence, Montes also explicitly acknowledged that he was agreeing to waive his rights to contest the constitutionality of the federal guidelines and argue that the court illegally sentenced him based on judicially determined facts.

agents obtained and executed a search warrant for Montes's home. During this search, the DEA agents recovered from the garage and other rooms 151 marijuana plants and an extensive hydroponic-marijuana-cultivation facility. Based on information from the CI, along with the DEA agents' personal observations of other persons entering and leaving Montes's home, including delivering suspected marijuana-growing supplies on one occasion, the agents also determined that Montes had associated with other persons involved with growing marijuana. Moreover, the agents discovered in the homes of these other marijuana growers similar hydroponic-marijuana-cultivation facilities.

The probation officer concluded that Montes was responsible for the 151 marijuana plants that DEA agents recovered from his home. The officer, therefore, recommended that Montes's offense level be set at 16, pursuant to U.S.S.G. § 2D1.1(c)(12) (the guideline for offenses involving at least 10, but less than 20 kilograms of marijuana). The probation officer also recommended a three-level adjustment of this offense level, pursuant to U.S.S.G. § 3E1.1(a), for acceptance of responsibility. With an adjusted offense level of 13, and a criminal history category of I, Montes's resulting guideline range was 12 to 18 months' imprisonment. However, because Montes's mandatory minimum statutory sentence was 60 months' imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(B), this

higher sentence became his guideline sentence, pursuant to U.S.S.G. § 5G1.1(c)(2).[2]

Montes objected to, among other things, the probation officer's failure to recommend sentencing under the safety-valve provisions. Montes argued that the government had agreed during the plea colloquy that Montes should receive this relief if he qualified for it. The probation officer responded that Montes had not yet provided a statement that was necessary for him to meet the criteria for the application of § 5C1.2 relief.

At sentencing, Montes renewed his objection to the PSI's and the government's failure to recommend that he be sentenced below his mandatory minimum statutory sentence, pursuant to the safety-valve provisions, arguing that this failure resulted in a breach of the parties' plea agreement. In doing so, Montes conceded that the government had not promised as part of this agreement that it would not object to safety-valve relief. Montes argued, instead, that, because he only had pled guilty to the cultivation charge, the government had violated the terms of their plea agreement by questioning him about the conspiracy and, therefore, causing him to be ineligible for safety-valve relief.

---

[2] Section 5G1.1(b) provides that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline range." See U.S.S.G. § 5G1.1(b)

The government responded that it had not asked Montes to admit to participating in a conspiracy. The government explained that the prosecutor and a DEA agent had advised Montes and his counsel, following the plea colloquy, that they had questions about (1) the ownership of the house in which Montes lived and cultivated the marijuana, (2) how Montes had begun the cultivating operation, (3) where Montes had obtained the materials for this operation, and (4) the contents of ledgers that agents recovered from Montes's home. The government also informed the court that Montes had failed to "tell all," as demonstrated by his "storm[ing] out of the courtroom" during a meeting in which the prosecutor and case agent were asking him these questions, and his subsequent failure to reschedule a meeting or, otherwise, to provide a written statement to the court.

Implicitly overruling Montes's objection to the probation officer's and the government's failure to recommend sentencing under the safety-valve provisions, the court acknowledged that Montes had not plead guilty to conspiracy. The court, however, determined that the government's questions to Montes had had "nothing to do with the conspiracy." The court then sentenced Montes to 60 months' imprisonment, 3 years' supervised release, and a $100 special assessment fee.[3]

---

[3] In imposing its sentence, the court noted that, if Montes "s[at] down and qualif[ied] for safety[-]valve with the government," the court, instead, would sentence Montes to 15 months' imprisonment. Subsequent to Montes's sentencing, we reiterated that the defendant must "tell all" "not later than the time of the sentencing hearing," but it clarified that district courts have

Montes argues on appeal that the government violated its promise in the parties' plea agreement not to oppose sentencing at the low end of Montes's guideline range by contending at sentencing that Montes was not eligible for safety-valve relief. Montes again concedes that the government did not explicitly promise to recommend that he be sentenced under the safety-valve provisions. Montes, however, asserts that the government "manipulated [the] situation" by forcing him to admit to participating in a conspiracy, and then arguing that he did not qualify for safety-valve relief based on his refusal to make such a concession. Montes further contends that, under the terms of the parties' plea agreement, the government could choose not to endorse his request for safety-valve relief, but it could not oppose it. Montes concludes that, because a breach of the plea agreement occurred, we should remand the case for a new sentencing hearing, with the order that the government "refrain from taking any position on the issue of the application of the safety valve."[4]

---

the discretion to continue sentencing hearing to give a defendant the opportunity to debrief for the purpose of qualifying for safety-valve relief. See United States v. Garcia, 405 F.3d 1260, 1274-75 (11th Cir. 2005). However, because Montes did not move for a continuance, and has not argued on appeal that the court committed reversible error in not continuing his hearing, he has waived our review of this issue. See United States v. Nealy, 232 F.3d 825, 830-31 (11th Cir. 2000) (holding that an argument not raised in an appellant's opening brief is deemed waived).

[4] As Montes notes, in the event of a breach of a plea agreement, there are two available remedies: "[t]he court can order specific performance of the agreement or afford the defendant the opportunity to withdraw the plea." See United States v. Jefferies, 908 F.2d 1520, 1527 (11th Cir. 1990).

We review de novo whether the government has breached a plea agreement. United States v. Copeland, 381 F.3d 1101, 1104 (11th Cir. 2004) (citing United States v. Mahique, 150 F.3d 1330, 1332 (11th Cir. 1998). The Supreme Court determined in Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262, 92 S.Ct. at 499. Thus, we have concluded that, "in determining whether the government has breached a plea agreement, we must first determine the scope of the government's promises." Copeland, 381 F.3d at 1105.

We also have explained that, "[i]n determining the meaning of any disputed terms in an agreement, the court must apply an objective standard and 'must decide whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea.'" Id. (quotation omitted). If the language in a plea agreement is ambiguous, we will consider extrinsic evidence to determine the defendant's reasonable understanding of the agreement, and it will read the ambiguous provision against the government. Id. at 1105-06. On the other hand, if the agreement is not ambiguous, we are "limited to the unambiguous meaning of the language in the agreement." Id. at 1106.

9

In Mahique, we examined under plain-error review a defendant's challenge to the district court's refusal to allow him either to withdraw his plea, or to enforce his plea agreement. Mahique, 150 F.3d at 1331-32. The defendant argued that the government breached the agreement by opposing his request for, among other things, to be sentenced under the safety-valve provisions. Id. at 1332. This plea agreement included the government's unambiguous promise not to oppose the defendant's request to be sentenced under the safety-valve provisions "if he [was] eligible, and the Court ma[de] appropriate findings regarding the criteria . . .." Id. at 1331. We concluded that, because the government's promise was conditioned on the defendant being eligible for the safety-valve provisions, and because eligibility for the safety-valve provisions was dependent on the defendant truthfully providing to the government all information and evidence he had regarding the offense—an act that had not occurred—the government did not breach the agreement by arguing that the defendant was not eligible for safety-valve relief. Id. at 1332-33.

Similarly, the language in Montes's plea agreement was unambiguous. Our review, thus, is limited to its terms. The government promised that, "in the event that no adverse information [was] received suggesting such a recommendation to be unwarranted, the United States [would] not oppose the defendant's request to

10

the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court." The government, however, did not promise to recommend sentencing under the safety-valve provisions. Indeed, the government explicitly stated during the plea colloquy that it did not have all of the information necessary to determine whether Montes qualified for safety-valve relief, and that the parties had no agreement concerning the applicability of this relief to Montes's sentence. Montes, as well, conceded during this hearing that the parties had no agreements that were not contained in the plea agreement.

Furthermore, to the extent Montes's brief can be construed as arguing that the government breached the plea agreement by asking him questions relating to conspiratorial acts that Montes believes fell outside of the conduct to which he plead guilty, he has failed to cite to a promise in his plea agreement that was breached. Regardless, as discussed below, to qualify for safety-valve relief, the defendant, before sentencing, must "truthfully provide[] to the [g]overnment all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." See U.S.S.G. § 5C1.2(a)(5). In addition, the defendant has the burden of showing that he has met all of the safety-valve factors. See United States v. Johnson, 375 F.3d 1300, 1302 (11th Cir. 2004). Montes failed to provide any written statement

11

showing that he satisfied this criteria, or to establish that the court erred in concluding that the government's questions as to marijuana cultivation fell outside the scope of § 5C1.2(a)(2). Thus, under the unambiguous terms of the plea agreement, the government did not breach the agreement by opposing sentencing under the safety-valve provisions after determining that Montes did not qualify for such relief. See Copeland, 381 F.3d at 1106.

As discussed above, in a separate argument, Montes contends that the district court erred in not sentencing him under the safety-valve provisions. Montes specifically contends that the court erred in concluding that he failed to truthfully provide to the government all of the information he had on the offense without first holding an evidentiary hearing to determine whether Montes had information that the government was seeking. Montes further asserts that (1) he was not required to have a "sit down interview" with the government to qualify for safety-valve relief, (2) the government "sabotaged" the "sit down interview" Montes did attend by demanding that he provide irrelevant information about a conspiracy, and (3) the court erroneously relied on the government to decide whether Montes qualified for safety-valve relief. Finally, Montes concedes that his plea agreement contained an appeal waiver, but he contends that the waiver is not applicable because (1) the federal guidelines no longer are mandatory, (2) the court

12

departed upward in sentencing him, and (3) the court violated his constitutional right to due process by failing to conduct an evidentiary hearing.

The government responds that Montes's challenge to his sentence should be dismissed because Montes's challenge on appeal "falls squarely within" the appeal waiver contained in his plea agreement. To the extent the government is arguing that Montes waived his right to raise on appeal his challenge to his sentence, we review the validity of an appeal waiver de novo. See United States v. Weaver, 275 F.3d 1320, 1333 n.21 (11th Cir. 2001). A sentence-appeal waiver is valid and enforceable if made knowingly and voluntarily. Id. at 1333 (citing United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993)). Thus, a waiver will be enforced if the government demonstrates either that: "(1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333.

Montes acknowledged in his plea agreement that, assuming the government did not appeal, he was waiving his right to appeal his sentence, directly or collaterally, including a challenge to the applicability of the safety-valve provisions contained in § 3553(f) and § 5C1.2, "except in the following situations: (a) an upward departure by the sentencing judge; (b) a sentence above the statutory

13

maximum; or (c) a sentence in violation of other law apart from the sentencing guidelines." Morever, during the plea colloquy, after the magistrate reviewed with Montes his sentence-appeal waiver, Montes agreed that he was freely and voluntarily waiving his right to appeal his sentence, excluding the above-referenced exceptions. Thus, Montes's sentence-appeal waiver is enforceable.

In addition, to the extent Montes is arguing that this sentence-appeal waiver is not applicable to his appeal, this argument is without merit. To the extent Montes is arguing that his 60-month mandatory minimum statutory sentence constituted an upward departure—one of the exceptions in his appeal waiver—we have concluded that:

> Application of § 5C1.2 does not . . . result in a <u>departure</u> from the guidelines range. Rather, application of § 5C1.2 allows a defendant to be sentenced <u>within</u> the guideline range by granting relief from the minimum sentence mandated by statute.

See <u>United States v. Cruz</u>, 106 F.3d 1553, 1556 (11th Cir. 1997) (emphasis in original). Similarly, although Montes is contending that the waiver is inapplicable because the federal guidelines no longer are mandatory, we have determined that plea agreement language permitting a defendant to escape an appeal waiver if the sentence exceeded the maximum permitted by statute did not allow the defendant to appeal his sentence based on the Supreme Court's recent decision in <u>United</u>

14

States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).[5] See

United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir.), petition for cert. filed,

No. 04-1663 (U.S. June 7, 2005).

Finally, to the extent Montes is arguing that his due-process claim falls

outside the sentence-appeal waiver, we recently have rejected a defendant's similar

argument that his Booker challenge, that the district court applied the guidelines in

an unconstitutional manner, fell within an exception to his appeal waiver, that is,

that the defendant could appeal a "violation of the law apart from the guidelines."

See United States v. Grinard-Henry, 399 F.3d 1294, 1297 (11th Cir.), cert. denied,

125 S.Ct. 2279 (2005). We explained in Grinard-Henry that the defendant's

argument directly involved the application of the sentencing guidelines, and that

the defendant had agreed as part of his plea agreement that his sentence would be

imposed in conformity with the federal guidelines. Id. Here, as well, Montes is

directly challenging the application of the guidelines in appealing the court's

refusal to sentence him pursuant to the safety-valve provisions.

Regardless, even if we were to conclude that Montes's waiver was invalid,

_____

[5] In Booker, the Supreme Court held that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial. See Booker, 543 U.S. at ___, 125 S.Ct. at 749-51. In a second and separate majority opinion, the Booker Court also instructed that the federal guidelines are now only advisory. See id. at ___, 125 S.Ct. at 764-65.

15

or that it did not encompass his arguments on appeal, Montes has not shown that reversible error occurred. When reviewing the denial of safety-valve relief, we review for clear error a district court's factual determinations, while we review de novo the court's legal interpretation of the statutes and sentencing guidelines. Johnson, 375 F.3d at 1301. Post-Booker, we continue to review a district court's factual determinations for clear error. See United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005) (reviewing factual findings for minimal-planning enhancement). We cannot find clear error unless it is "left with a definite and firm conviction that a mistake has been committed." Id. at 1177 (quotation omitted).

Section 3553(f) of Title 18 of the United States Code directs district courts to "impose a sentence pursuant to the guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence, if the court finds at sentencing, after the [g]overnment has been afforded the opportunity to make a recommendation, that" five of five listed factors are present. 18 U.S.C. § 3553(f). This provision, as well as U.S.S.G. § 5C1.2, which contains the same list of factors, is commonly called the "safety valve." Johnson, 375 F.3d at 1302. It applies to a limited number of crimes, including cultivating of marijuana, in violation of § 841. Id. Morever, as discussed above, the defendant has the burden of showing that he has met all of the safety-valve factors. Id.

16

The last safety-valve factor—the only factor at issue in this case—requires the defendant to show that, not later than the time of the sentencing hearing, the defendant has truthfully provided to the government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). To satisfy this "tell all" factor, the defendant has an affirmative responsibility to "truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct." Johnson, 375 F.3d at 1302 (quotation omitted). Thus, it is the offense for which the defendant has been convicted that determines the scope of information that the defendant must disclose. Id.

In Johnson, we examined a defendant's challenge to the district court's decision not to sentence him under the safety-valve provisions, based on the court's finding that the defendant had failed to divulge information about the intended distribution of the 273 marijuana plants he was cultivating. Id. at 1301-02. The defendant argued that he provided all of the information necessary because the scope of information he was required to disclose was properly defined with reference to the crime of cultivation. Id. at 1302. We determined that, "given the [] large number of plants, the district court did not err in reasonably inferring

17

that [the defendant] was growing the marijuana for distribution," and that "[n]o reasonable law enforcement officer investigating this cultivation offense would [have] fail[ed] to ask [the defendant] about the intended distribution of such a large quantity of marijuana." Id. at 1302-03. We, therefore, concluded that the district court properly determined that information about the intended distribution related to the defendant's offense of conviction, and that it did not err in finding that the defendant failed to satisfy the "tell all" factor in § 5C1.2(a)(5) by not disclosing this information. Id. at 1303.

In pleading guilty, Montes agreed that he was responsible for cultivating 151 marijuana plants. The PSI also included that a search of Montes's home had revealed an extensive hydroponic-marijuana-cultivation facility, and that DEA agents had observed other persons entering and leaving Montes's home carrying suspected marijuana-growing supplies. Moreover, these DEA agents discovered in the homes of other marijuana growers similar hydroponic-marijuana-cultivation facilities. Thus, similar to the scenario in Johnson, it was reasonable for the government to seek information about (1) the ownership of the house in which Montes lived and cultivated the marijuana, (2) how Montes had begun the cultivating operation, (3) where Montes had obtained the necessary materials for this operation, and (4) the contents of ledgers that agents recovered from Montes's

18

home. The district court, therefore, did not err in finding, at least implicitly, that Montes, in refusing to answer any of these questions, failed to satisfy the "tell all" factor in § 5C1.2(a)(5).[6]

To the extent Montes also is arguing that the district court committed reversible error in not conducting an evidentiary hearing before denying him safety-valve relief, we generally review a district court's denial of an evidentiary hearing for abuse of discretion. United States v. Gay, 251 F.3d 950, 951 (11th Cir. 2001). However, when a defendant raises an argument for the first time on appeal, such as here, our review only is for plain error. United States v. Peters, 403 F.3d 1263, 1270 (11th Cir. 2005). Under plain error review, we

> may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights . . .. Even then, [this Court] will exercise [its] discretion to rectify the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

Id. at 1271 (internal quotations and marks omitted).

---

[6] Although it arguably would have been preferable if the district court had stated explicitly that it was not sentencing Montes under the "safety valve" provisions because Montes failed to comply with the "tell all" factor in § 5C1.2(a)(5) by not providing information relating to his cultivation of marijuana, remand is not necessary here because the evidence in the record clearly shows that he did not qualify for this relief. Cf. United States v. Reid, 139 F.3d 1367, 1368 (11th Cir. 1998) (vacating and remanding the defendant's sentences when the defendant provided information he possessed concerning the criminal activity to authorities, the district court did not explain why it had concluded that the defendant did not qualify for relief under the "safety valve" provisions, and the evidence in the record also did not clearly establish that the defendant did not qualify).

19

Under § 5C1.2(a)(5), "the fact that the defendant has no relevant or useful other information to provide . . . shall not preclude a determination by the court that the defendant has complied with this requirement." See U.S.S.G. § 5C1.2(a)(5). However, assuming that Montes could show error and that it was plain, he has failed to explain why the court's failure to conduct an evidentiary hearing affected his substantial rights. Indeed, as discussed above, Montes failed to submit any evidence from which the court could infer that he either shared with the government all of the information he had about the offense conduct and related activities, or that he had no such information. The court, therefore, did not plainly err in not conducting an evidentiary hearing before deciding not to sentence Montes under the safety-valve provisions. See Peters, 403 F.3d at 1271.

Accordingly, we conclude that the government did not breach the terms of the parties' plea agreement by informing the court that Montes did not qualify for sentencing under the safety-valve provisions. Furthermore, we conclude that, even if Montes did not waive his right to appeal his sentence, the district court did not commit reversible error in concluding that Montes was not eligible for safety-valve relief. We, therefore, affirm.

**AFFIRMED.**