[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 21, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10317
Non-Argument Calendar

_____

D. C. Docket No. 08-00353-CR-T-26-TBM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

INES HERNANDEZ-ZALDIVAR,
a.k.a. Miguel Angel Hernandez,

Defendant-Appellant.

_____

No. 09-10318
Non-Argument Calendar
_____

D. C. Docket No. 08-00368-CR-T-26-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

INES HERNANDEZ-ZALDIVAR,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(August 21, 2009)

Before BLACK, BARKETT and FAY, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Ines Hernandez-Zaldivar appeals his overall sentence of 84 months' imprisonment, 60 months of which were imposed for the instant unlawful re-entry offense, and 24 months of which were imposed for violating his supervised release for an unrelated unlawful re-entry offense. For the

2

reasons set forth below, we affirm.

## I.

In August 2008, a federal grand jury in the Middle District of Florida returned an indictment against Hernandez-Zaldivar, charging him with, inter alia, being an alien found in the United States without permission after having been previously deported on five different occasions and having been previously convicted of an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2).

Hernandez-Zaldivar pled guilty to the above charge, pursuant to a written plea agreement. The factual basis contained in the agreement provided that Hernandez-Zaldivar was a native and citizen of Mexico who, after being found during a street gang suppression operation in the Middle District of Florida in August 2008, admitted that he was an illegal alien, had been previously deported from the United States at least five times, and had been previously convicted of possession of a firearm, which was an aggravated felony. As a part of the agreement, and in exchange for Hernandez-Zaldivar's participation in the Middle District's Fast Track Early Disposition Program, he "agree[d] to waive the right to directly appeal [his] . . . sentence . . . ." This waiver provision did not contain any exceptions.

In advising Hernandez-Zaldivar of his rights at the plea hearing, the district

3

court engaged in the following colloquy regarding the sentence appeal waiver:

| | |
|---|---|
| COURT: | And then you also agree not to appeal your sentence, that is, you waive your right to a direct appeal . . . . |
| | Under this waiver provision, you're giving up that right. Let me give you an example. Let's assume I made a mistake in calculating your guideline range, and you know I was wrong. Under this waiver provision, you can't ask the Eleventh Circuit Court of Appeals to correct my mistake. |
| | You understand that? |
| THE DEFENDANT: | Yes. |
| COURT: | . . . . Now, are you entering into this entire plea agreement, including the waiver of appeal provision, freely, voluntarily, knowingly and intelligently because it's what you want to do and for no other reason? |
| THE DEFENDANT: | No, everything is fine. |
| COURT: | No, is that why you're doing it; freely, voluntarily, knowingly and intelligently? |
| THE DEFENDANT: | Yes. |

After Hernandez-Zaldivar admitted to the factual basis contained in the plea agreement, the district court accepted his guilty plea.

Before sentencing, the probation officer filed a petition with the court,

4

alleging that Hernandez-Zaldivar's unlawful re-entry offense constituted a violation of the terms of his supervised release imposed in connection with a prior conviction in the District of Arizona.[1]  Specifically, the probation officer alleged that, on September 27, 2005, Hernandez-Zaldivar was convicted in Arizona of unlawful re-entry after deportation, for which he was sentenced to 24 months' imprisonment and 24 months of supervised release.  He began serving the period of supervised release on April 30, 2007, and the conditions of his supervision prohibited him from re-entering the country without authorization. Thus, because the instant offense violated that condition, the probation officer recommended that the district court revoke Hernandez-Zaldivar's term of supervised release.

The court held a joint sentencing/revocation hearing, addressing both the sentence to be imposed for Hernandez-Zaldivar's unlawful re-entry offense and the alleged violation of his supervised release in the Arizona case.  The court first found, and Hernandez-Zaldivar agreed, that because he had pled guilty to the instant offense, there was no dispute that he had violated the terms and conditions of his supervision .  The court found that the Chapter 7 guideline range for this violation was 12 to 18 months' imprisonment and that it carried a statutory maximum penalty of 24 months' imprisonment.

_____

[1]  The district judge who presided over the Arizona case transferred jurisdiction of the supervised release proceedings to the Middle District of Florida.

With respect to the unlawful re-entry offense, the government moved for a four-level downward departure based on Hernandez-Zaldivar's participation in the fast-track program. The court granted the motion "with great reluctance," giving Hernandez-Zaldivar a guideline range of 21 to 27 months' imprisonment. After defense counsel acknowledged that the court correctly calculated the guideline range, he requested that the court impose a sentence at the high-end of the guideline range in light of the fact that Hernandez-Zaldivar had previously been deported on five different occasions. With respect to the sentence to be imposed upon revocation of supervised release, defense counsel similarly requested that the court impose a sentence at the high-end of the Chapter Seven guideline range.

Hernandez-Zaldivar then personally apologized to the United States, but the court expressed doubts about his sincerity. The court explained: "He obviously hasn't learned his lesson. He's been deported several times, he's on supervised release for the same type of offense and he comes back." The government then reviewed Hernandez-Zaldivar's criminal record and requested that the court impose a sentence at the high end of the guideline range. With respect to the sentence to be imposed for violating his supervised release, the government requested that the court impose the statutory maximum sentence of 24 months' imprisonment.

After confirming that the supervised release violation was not encompassed by the plea agreement, the court imposed its sentence as follows:

> All right. Well, he's already been given a benefit several times by other Federal Judges in other districts. He's been given another benefit by the Government in allowing him to participate in the fast track program. I've honored the plea agreement, but as we all know, the guidelines are now advisory in nature. And in addition to consulting the advisory guidelines, it's also my obligation to consult and consider the statutory factors embraced in Title 18 of the United States Code, Section 3553(a)1 through 7.
>
> I'm now directed to consider the nature and circumstances of the offense and the history and characteristics of the Defendant. The nature and circumstances of this offense is almost identical to the nature and circumstance for which he's now on supervised release. And his history and characteristics reveal he's been deported several times, he keeps coming back to this country illegally.
>
> I'm also directed to insure that any sentence I impose addresses the issues of; it must reflect the seriousness of the offense, it must promote respect for the law, and it must provide just punishment for the offense. And I also must afford adequate deterrence to criminal conduct and also must protect the citizens of this community from further crimes of the Defendant.
>
> In my view, taking all those factors into consideration, especially his history and characteristics, and especially to deter him from further criminal conduct, a sentence within the advisory guidelines range is simply not appropriate, it would not be reasonable and would not be sufficient to comply with the statutory purposes of sentencing. He wants to stay in the United States, I'm going to let him do that for an extended period of time, but in a Federal facility.
>
> In my view, with regard to the new substantive offense, a sentence of five years or 60 months is reasonable and that is to be followed by a two-year term with regard to this other [supervised release] case to run

7

consecutive for a total term of incarceration of 84 months or seven years.

In subsequently addressing the supervised release violation in particular, the court revoked Hernandez-Zaldivar's supervised release, re-imposed the consecutive 24-month sentence, and reiterated that, in arriving at this sentence, it had "considered the statutory factors . . . , and the advisory guidelines and policy statements issued by the United States Sentencing Commission."

The district court memorialized its two sentences by entering a judgment of conviction for the substantive unlawful re-entry offense and a judgment of revocation for the supervised release violation. Hernandez-Zaldivar filed a notice of appeal from each judgment, and we consolidated the appeals.

## II.

On appeal, the government correctly separates the court's overall 84-month sentence into its two components – the 60-month sentence for the substantive unlawful re-entry offense and the consecutive 24-month sentence for the supervised release violation – and argues that, pursuant to the sentence appeal waiver, Hernandez-Zaldivar has waived his right to challenge the 60-month sentence. It is true that the sentence appeal waiver in that case generally precluded Hernandez-Zaldivar, without exception, from challenging the court's sentence on direct appeal.

However, in order for such a sentence appeal waiver to be effective, it must be knowingly and voluntarily entered. United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993). "[W]hether a defendant effectively – that is knowingly and voluntarily – waived his right to appeal his sentence is a question of law that this court reviews de novo." Id. at 1352. In this respect, a sentence appeal waiver "will be enforced if the government demonstrates either: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver." United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005) (quotation omitted).

In this case, the district court specifically questioned and informed Hernandez-Zaldivar about the sentence appeal waiver at the plea hearing, and the record reveals that he understood its significance. Thus, we will enforce the waiver. Moreover, the broad language of the sentence appeal waiver in this case admits of no exceptions and therefore encompasses Hernandez-Zaldivar's reasonableness challenge. Cf. United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005) ("[T]he right to appeal a sentence based on Apprendi/Booker grounds can be waived in a plea agreement. Broad waiver language covers those grounds of appeal."). Accordingly, we decline to review the district court's 60-month

sentence for reasonableness.

## III.

On the other hand, because the sentence appeal waiver does not cover the supervised release violation, we do address Hernandez-Zaldivar's reasonableness challenge as it relates to the 24-month sentence.[2] We review a sentence imposed upon revocation of supervised release for reasonableness. United States v. Sweeting, 437 F.3d 1105, 1106-07 (11th Cir. 2006). The Supreme Court has clarified that this Court reviews a sentence for reasonableness under an abuse of discretion standard. Gall v. United States, 552 U.S. 38, __, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007). Similarly, we review for abuse of discretion a district court's decision to exceed the sentencing range in Chapter Seven of the Sentencing Guidelines. United States v. Silva, 443 F.3d 795, 798 (11th Cir. 2006). The party challenging the sentence bears the burden of establishing that the sentence was unreasonable. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

"Under 18 U.S.C. § 3583(e), a district court may, upon finding by a preponderance of the evidence that a defendant has violated a condition of supervised release, revoke the term of supervised release and impose a term of imprisonment after considering certain factors set forth in 18 U.S.C. § 3553(a)."

---

[2] Hernandez-Zaldivar does not dispute the court's authority to revoke his supervised release or its determination that his Chapter 7 guideline range was 12 to 18 months' imprisonment.

10

Sweeting, 437 F.3d at 1107; see 18 U.S.C. § 3583(e)(3). Under § 3583(e), the relevant § 3553(a) factors that the court must consider are: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to afford adequate deterrence; (3) the need to protect the public; (4) the need to provide the defendant with educational or vocational training or medical care; (5) the Sentencing Guidelines range and pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwanted sentencing disparities; and (7) the need to provide restitution to victims. See 18 U.S.C. § 3583(e), cross referencing 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D), (a)(4)-(7). In Chapter Seven of the Guidelines, the Sentencing Commission promulgated non-binding policy statements governing the violation of supervised release. See United States v. Hofierka, 83 F.3d 357, 361 (11th Cir. 1996) (holding that the policy statements in Chapter Seven are non-binding).

In imposing the 24-month sentence, the district court expressly stated that it had considered the statutory factors, the advisory guidelines, and the Sentencing Commission's policy statements. Furthermore, the court understandably emphasized the fact that Hernandez-Zaldivar had not "learned his lesson," as he continued to re-enter the country unlawfully, having been previously deported on five separate occasions since 2001. In this respect, the court explicitly tied this

11

point to two of the statutory factors, namely, the "history and characteristics" of Hernandez-Zaldivar, § 3553(a)(1), and the need to deter him from committing further criminal conduct, § 3553(a)(2)(B).

The only argument advanced by Hernandez-Zaldivar on appeal to support his assertion that his sentence was unreasonable is that, despite his history of unlawfully re-entering the country, he has not committed any additional criminal conduct. This contention, however, significantly understates the severity of Hernandez-Zaldivar's criminal history, as unlawfully re-entering the country following deportation is itself a criminal offense, and, contrary to Hernandez-Zaldivar's assertion, repeatedly committing such an offense does support an upward variance. In addition, his argument is further undercut by the fact that, in June 2003, he was convicted of an aggravated felony, namely, possession of a firearm. As this is the only argument advanced by Hernandez-Zaldivar on appeal, we conclude that he has not met his burden of showing that the court's 24-month sentence was substantively unreasonable. Accordingly, we affirm.

**AFFIRMED.**