[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13172

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KAREN DICKERSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:19-cr-00072-RSB-CLR-1

_____

Before WILLIAM PRYOR, Chief Judge, LAGOA and BRASHER, Circuit Judges.

PER CURIAM:

Karen Dickerson appeals her conviction for structuring financial transactions to evade reporting requirements and her sentence of 51 months of imprisonment. 31 U.S.C. § 5324(a)(3). Dickerson challenges the denial of her motion to withdraw her guilty plea. Fed. R. Crim. P. 11(d)(2)(B). She also challenges the denial of her request for additional time to review her revised presentence investigation report. We affirm.

## I. BACKGROUND

On November 4, 2019, Dickerson agreed to plead guilty to the structuring charge in her second superseding indictment, 31 U.S.C. § 5324(a)(3), in exchange for the dismissal of one count of conspiring to commit money laundering, 18 U.S.C. § 1956(h), 11 counts of money laundering, *id.* § 1956(a)(1)(B)(i), and one count of conducting an unlicensed money transmitting business, *id.* § 1960. In her written plea agreement, Dickerson admitted to making 22 cash withdrawals of less than $10,000 between July and October 2018. She acknowledged that she faced a maximum sentence of five years of imprisonment followed by three years of supervised release, a $250,000 fine, restitution, and the forfeiture of assets; that she had not been promised a particular sentence; and that she could not withdraw her guilty plea if dissatisfied with her sentence.

Dickerson also agreed to "entirely waive[] her right to a direct appeal of her conviction and sentence on any ground" subject to three exceptions: if she received a "sentence above the statutory maximum"; if her sentence exceeded her advisory Sentencing Guidelines range as calculated by the district court; or if the Government appealed. Dickerson also expressed the "belie[f] that her attorney has represented her faithfully, skillfully, and diligently, and . . . complete[] satisf[action] with the legal advice given and the work performed by her attorney."

That same day, during her change of plea hearing, Dickerson responded negatively when asked whether "anybody [was] forcing or making [her] plead guilty" and affirmed that "this [was] her] own decision." Dickerson also denied that "there [was] anything about [her] relationship with Mr. Lowther[, her attorney,] that [was] influencing [her] decision to plead guilty today." Dickerson stated that she "had an adequate opportunity to meet with Mr. Lowther about [her] case" "[m]aybe four times." Lowther interjected that the "two other attorneys in my firm who have been working with [Dickerson] on the case," Ms. Spearman "[a]nd "Murdoch Walker, [Lowther's] partner" who "handled the case initially," resulted in a total of "seven" to "eight" meetings with Dickerson. Dickerson confirmed that she had "a sufficient amount of time to discuss this case with [counsel]" and had "also been able to talk to them" over the telephone. Dickerson acknowledged that counsel had "reviewed with [her] any discovery that the government . . . produced," "discussed . . . [her] right to trial and any

defenses they would present if [her] case went to trial," "permitted [her] to go over [her] case with them," "explained to [her] the procedures that were going to take place" at trial and when pleading guilty, and "discussed with [her] the federal sentencing system, including the United States Sentencing Guidelines." When asked if she was "satisfied with the representation and advice given to [her] in this case by [her] attorneys," Dickerson responded, "Yes," and she denied "hav[ing] any complaints about them whatsoever."

Dickerson acknowledged that the district court would "calculate the Guidelines, . . . but [it would] not [be] bound by the Guidelines" to select her sentence. She also acknowledged that "any sentencing estimate . . . given to [her] by anyone is just . . . their best guess" and is "not binding on them . . . [or] on the Court"; that it was "solely up to the Court to decide what sentence [she would] receive"; it could "sentence [her] to the maximum extent allowed by law just as if [she] had gone to trial and been found guilty of the charge that [she was] pleading guilty to"; and "that if [she] receive[d] a sentence . . . more harsh or lengthier than . . . [she] thought . . . [she would] get, that won't be grounds for withdrawing [her] guilty plea." Dickerson denied that "anybody [had] made any promises or guarantees to [her] about the sentence that [she] will receive."

Dickerson "acknowledg[ed] that [she] underst[ood] the terms" of her plea agreement and had "read [it] in its entirety." Dickerson agreed "that [she] authorize[d] Mr. Lowther and [her] other attorneys to negotiate th[e] plea agreement," they had

"answer[ed] any questions [she] had regarding . . . [it] before [she] signed it," and she "agree[d] to be bound by its terms" and "all the facts contained therein . . . ." She acknowledged that she was "also proposing through [her] plea agreement to give up [her] rights to appeal [her] sentence or to further contest [her] case in any other proceeding" "except for the limited exceptions that are spelled out in [her] plea agreement," regardless of whether she was "unhappy with" her sentence. Dickerson admitted that she "withdrew money, less than $10,000, to avoid the bank reporting it." After Dickerson denied being enticed or coerced to plead guilty, affirmed that she was "satisfied with the services that [her] lawyer ha[d] rendered in [her] case," and twice affirmed that she "deci[ded] to plead guilty voluntar[ily] and of [her] own free will" and that she was "pleading guilty because [she was], in fact, guilty of committing this crime," the district court accepted her plea of guilty.

After the probation office issued Dickerson's presentence investigation report and revised the report, the district court scheduled her sentencing for March 10, 2020. That day, Dickerson told counsel that she wanted to withdraw her guilty plea, but they decided instead to move to withdraw from the case. After speaking with Dickerson, the district court allowed Lowther's firm to withdraw.

On December 11, 2020, with the assistance of appointed counsel Steven Woodward, Dickerson moved to withdraw her plea of guilty. *See* Fed. R. Crim. P. 11(d)(2)(B). Dickerson argued that her plea was not made knowingly and voluntarily and she

"lacked close assistance of counsel." Dickerson alleged that "work[ing] with three different attorneys . . . caus[ed] breakdowns in trust and communication," she did not understand "the penalties that she was facing" before her change of plea hearing, she did "not fully review[] the plea agreement until the morning of" the hearing, and "her counsel [had] not adequately explain[ed] the potential sentencing guidelines." Dickerson also alleged that "she felt pressured to plead guilty" "because of a rushed meeting with counsel and assurances that she could be released from custody pending sentencing."

On May 25, 2021, the district court held an evidentiary hearing on Dickerson's motion, during which she elected to appear *pro se* with Woodward as standby counsel. Dickerson denied that Lowther visited her at the jail and stated that she refused repeatedly to plead guilty. Dickerson professed to "being dishonest" with the district court that her plea was voluntary and that she was satisfied with counsel's representation. Dickerson recounted that, on the morning of her change of plea hearing, Lowther reviewed the plea agreement with her, told her not to "go in there and f*** this up" if she "want[ed] to go home," threatened to withdraw if she did not plead guilty, and instructed her how to respond to questions during the plea colloquy. But later Dickerson insisted that Lowther "didn't force" her to plead guilty and "just told [her] that if [she] t[ook] the plea, that [she] would get probation and . . . go home that day." Dickerson authenticated email messages exchanged with Lowther

in which she vacillated about pleading guilty before her change of plea hearing.

Dickerson's sister, Kim, testified that Lowther asked her encourage Dickerson to accept the plea offer to "get three years" and he would "try to get it where [she] d[id]n't have to serve any time." When questioned on cross-examination, Kim stated that she spoke to Lowther "[p]robably three" times and they "text[ed] practically on a daily basis." Kim denied that Lowther told Dickerson that she "didn't have a choice but to take the plea" and recalled that "[h]e felt that she should" accept the offer because "[i]t was in her best interest."

Lowther testified that Dickerson received three plea deals from the government and rejected the two initial offers that required her to plead guilty to money laundering. Lowther spoke to Dickerson for 30 to 40 minutes about the third offer before she agreed to plead guilty to the structuring charge. Lowther recalled that he and his two associates conversed regularly with Dickerson on the telephone and one of them met with her bi-weekly. Lowther met with Dickerson twice, spoke to her by telephone several times, and with her permission discussed the case with her son and her sister. Lowther also stated that he texted or talked to Dickerson's sister almost daily.

Lowther recounted that, after receiving the third offer, he flew from Atlanta to Savannah, rented a car, and drove to Liberty County Jail to discuss the plea agreement with Dickerson, which he recorded on his billing statement. Lowther explained that he did

not sign the visitor log when he visited Dickerson because he was familiar with the jail and only signed its visitor log when required by officers. Lowther denied coercing Dickerson to plead guilty, threatening to withdraw as counsel, or advising her that she would receive a sentence of probation. Lowther recalled that Dickerson did not want to go to trial or take the plea, but he advised her that those were the only two options and she could receive a lesser sentence by pleading guilty. He also recalled that Dickerson wanted to plead guilty before the change of plea hearing.

The district court denied Dickerson's motion to withdraw her guilty plea. *See* Fed. R. Crim. P. 11(d)(2)(B). The district court ruled that Dickerson's arguments "complete[ly] conflict[ed] with the terms of the plea agreement and the transcript of the plea colloquy." "Looking at the totality of circumstances, . . . [the district court] denied [her motion] based on . . . four relevant factors," all of which weighed against Dickerson. First, the district court ruled it was "clear from the record that [Dickerson] had close assistance of experienced counsel who met with her multiple times," who "reviewed the facts, the law, [and] the pertinent documents with her," and who she "communicat[ed] with . . ., including through her family." Second, the district court ruled that Dickerson's change of plea to guilty "was knowing and voluntary." The district court "remember[ed] . . . that [Dickerson] had no hesitancy . . . to plead guilty that day" and that she "clearly understood the nature of the charges against her, the consequences of her plea and the essential elements the government [had] to prove." As to the final two

factors, the district court determined that "judicial resources would not be conserved by permitting the withdrawal" and that "there [would be] some prejudice to the government by allowing the withdrawal . . . ."

## II. STANDARD OF REVIEW

We review the denial of Dickerson's motion to withdraw her plea for abuse of discretion. *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006). "A district court abuses its discretion if it fails to apply the proper legal standard or to follow proper procedures in making the determination, or makes findings of fact that are clearly erroneous." *United States v. Izquierdo*, 448 F.3d 1269, 1276 (11th Cir. 2006) (internal quotation marks omitted). We will not disturb a finding of fact "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quoting *United States v. Eddy*, 8 F.3d 577, 580 (7th Cir. 1993)).

## III. DISCUSSION

Dickerson challenges her conviction and sentence. Dickerson argues that her guilty plea was entered involuntarily under pressure from counsel and without his close assistance. She also argues that she was denied her right to review the revised presentence investigation report, as required by Federal Rule of Criminal Procedure 32(g) and section 3552(d) of Title 18 of the United States Code. We address her arguments in turn.

## A. The District Court Did Not Abuse Its Discretion by Denying Dickerson's Motion to Withdraw Her Guilty Plea.

After the district court accepts a defendant's guilty plea, but before sentencing, the defendant may withdraw the plea if the district court rejects the plea agreement or if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2). To determine whether a defendant has a fair and just reason to withdraw her plea, a district court must consider the totality of the circumstances preceding the plea, including whether she had close assistance of counsel, whether her plea was entered knowingly and voluntarily, whether it would conserve judicial resources to allow withdrawal, and whether withdrawal would prejudice the government. *United States v. Buckles*, 843 F.2d 469, 471–72 (11th Cir. 1988). The defendant must satisfy the first two factors to warrant further consideration of her motion to withdraw her guilty plea. *United States v. Gonzalez-Mercado*, 808 F.2d 796, 801 (11th Cir. 1987).

The district court did not abuse its discretion by refusing to allow Dickerson to withdraw her guilty plea. The district court reasonably discredited Dickerson's testimony and credited testimony from her sister and Lowther, which were consistent with the written plea agreement and Dickerson's statements during her change of plea hearing. That evidence belied Dickerson's argument that she lacked close assistance of counsel and proved that she communicated frequently with Lowther and his associates to resolve her criminal charges and that she decided to plead guilty after serious

deliberation and with knowledge of the consequences of her decision, including the possibility that she faced a sentence of up to 5 years of imprisonment. That Lowther might have expressed optimism that the district court might release Dickerson on probation does not affect the voluntariness of her plea. *See Buckles*, 843 F.2d at 472 ("A defendant cannot complain of coercion where [her] attorney, employing his best professional judgment, recommends that the defendant plead guilty."). We presume that Dickerson was being truthful when she stated during her plea colloquy that she was assisted by and satisfied with counsel and that she decided to plead guilty because she had "withdr[awn] money, less than $10,000, to avoid the bank reporting it." *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Her statements evidence that she changed her plea to guilty knowingly and voluntarily. Additionally, Dickerson's gamemanship with counsel and the timing of her motion to withdraw suggests she sought to avoid an inevitable prison sentence. *See Gonzalez-Mercado*, 808 F.2d at 801. Dickerson's arguments and evidence fall well short of establishing "a fair and just reason for requesting the withdrawal" of her guilty plea. Fed. R. Crim. P. 11(d)(2)(B).

## B. Dickerson is Barred from Challenging the Denial of Her Request for Additional Time Before Sentencing.

The appeal waiver in Dickerson's plea agreement bars her challenge to the denial of her request for additional time to review her revised presentence report. Plea agreements "are like contracts and should be interpreted in accord with what the parties

intended." *United States v. Rubbo*, 396 F.3d 1330, 1334 (11th Cir. 2005). Dickerson agreed to "entirely waive[] her right to a direct appeal of her conviction and sentence on any ground" subject to three exceptions not applicable here. The district court explained the waiver to Dickerson during her change of plea hearing, and she acknowledged that her right to appeal was limited. *See United States v. Weaver*, 275 F.3d 1320, 1333 (11th Cir. 2001). Dickerson knowingly and voluntarily agreed to forego the argument she raises on appeal.

## IV. CONCLUSION

We **AFFIRM** Dickerson's conviction and sentence.